[Civ. No. 17417. Second Dist., Div. Two. Jan. 26, 1950.]

CHERYL MELINDA YOUNG, a Minor, etc., Appellant, v. BANK OF AMERICA NATIONAL TRUST AND SAVINGS ASSOCIATION (a National Banking Association), Respondent.

Meserve, Mumper & Hughes for Appellant.

Sidney A. Moss and Henry F. Walker for Respondent.

WILSON, J.— The judgment of nonsuit from which plaintiff has appealed must be reversed since thereby the trial court has deprived plaintiff of her undeniable constitutional right to have the jury which was empaneled to hear the case determine the credibility of the witnesses and draw such presumptions and inferences as were justified by the evidence. In granting the nonsuit the court has appropriated the functions of the jury and, as shown by the court's remarks, has drawn inferences and indulged presumptions which may have been alien to the minds of the jurors.

The rules governing the trial court in the granting of a motion for a nonsuit or a directed verdict are set forth in *Weck* v. *Los Angeles County Flood Control Dist.* 80 Cal.App.2d 182, 190 [181 P.2d 935], and the power and function of an appellate court in reviewing a judgment of nonsuit are found in *Bosqui* v. *City of San Bernardino,* 2 Cal.2d 747, 760 [43 P.2d 547], and *Shinn* v. *Johnson,* 83 Cal.App.2d 661, 662 [189 P.2d 322].

At the time of the accident in question plaintiff was 18 months of age. On December 27, 1945, she was taken to the branch bank of defendant in Glendale by her mother, Mrs.

Young, who intended to open a savings account. They entered through the Broadway entrance to the bank. At the main entrance on Brand Boulevard there were two large bronze doors so hinged that each could be pushed either outward or inward. They were equipped with devices known as double-acting door checks which, if in proper working order, would cause the doors to stop when they first reached the center or closed position and prevent them from swinging outward and inward after they had been released by a person who had passed through the doorway. While Mrs Young was waiting to reach the counter where her account was to be opened plaintiff ran toward the Brand Boulevard entrance at about the time a patron was leaving the bank. The latter pushed the door outward and when it was released it did not stop at the closed position but swung inward and outward several times. The child reached the door while it was swinging, was knocked down by its force and her thumb was severed at the first joint.

Donald MacVicar, vice-president and manager of the branch bank, called by plaintiff under section 2055 of the Code of Civil Procedure, testified he had been manager of that branch for several years; in December, 1945, three or four weeks before plaintiff was injured, his grandson, about 3½ years of age, had sustained a fractured finger when his hand was caught in the same door; his daughter-in-law, mother of the boy, informed him of the accident immediately after its occurrence; he was in and out of the bank through the Brand Boulevard doorway daily during November and December of 1945 and thereafter; from the time of his grandson's injury until January, 1947, he did not observe any change in the operation of the door and paid no attention to the manner in which it operated; he did not remember whether he noticed any change in the functioning of the door, and did not know whether or not it was serviced during that period; although he passed through the doorway once or twice daily for several years he did not remember whether the door swung or "flip-flapped" back and forth, and could not say positively that it did not do so.

Two witnesses who had had several years' experience in the maintenance and servicing of double-acting door checks of the type on the door in question gave expert testimony concerning the construction, design, purpose and function of such devices. They testified that if the door check had been in proper working order it would have acted as a brake similar

to a hydraulic brake on an automobile and would have stopped the door at the center or closed position and would have prevented it from swinging inward and outward. One of the witnesses had observed the functioning of the door in question, in October, 1946, and in January, 1947. He found there was no checking action—the door would swing past the center point and continue to "flip flap back and forth" until finally it came to rest, such action being due to a defect in the checking device. The door weighed several hundred pounds.

Plaintiff minor, when accompanying her mother to the bank where the latter was transacting business, was an invitee or business visitor, and defendant owed her a duty to maintain its premises in a reasonably safe condition. (*Crane* v. *Smith,* 23 Cal.2d 288, 297 [144 P.2d 356].) Defendant concedes this to be the rule. It also concedes that the defense of contributory negligence is not available against a child of tender years.

The evidence is uncontradicted (1) that the door check was out of order; (2) if in order it would have prevented the door from swinging or flapping; (3) its failure to function permitted the door to swing inward and outward instead of stopping on its first arrival at the closed position; (4) plaintiff was a business visitor in the bank; (5) she was injured by the swinging door; (6) the manager passed through this doorway daily for several years prior to the accident; (7) the injury to his grandson by the same door was made known to him immediately after the accident; (8) the door check was not repaired.

Every inference favorable to plaintiff fairly deducible from the evidence and every favorable presumption fairly arising therefrom must be considered as facts proved in favor of plaintiff. (*Bosqui* v. *City of San Bernardino,* 2 Cal.2d 747, 760 [43 P.2d 547].) The jury had a right to draw its own inferences and to make its own deductions from the evidence, and to find therefrom that defendant either was or was not negligent and that plaintiff's injury was or was not caused by defendant's failure to exercise the degree of care due from it to its invitees and business visitors. The nonsuit has wrongfully deprived plaintiff of her right to have these matters determined by the jury.

The jury, if permitted to perform its functions, might have determined (it would have been justified by the evidence in so doing) that plaintiff's injury was caused by the dangerous and defective condition of the door and its checking device; that defendant, through its manager, had notice of such condi-

tion for a period of sufficient duration prior to the accident to have had the defect remedied by causing the door check to be repaired and placed in good order so that it would have prevented the door from swinging. It is in evidence, uncontradicted, that the door remained in the same defective condition in October, 1946, and January, 1947, more than a year after the date of plaintiff's injury.

The evidence of MacVicar, manager of the bank, produced by plaintiff under section 2055 of the Code of Civil Procedure, was not binding upon her on the motion for a nonsuit,—it weighed for her as far as favorable, but should have been disregarded where it was unfavorable. (*Weck* v. *Los Angeles County Flood Control Dist.,* 80 Cal.App.2d 182, 191 [181 P.2d 935].)

Evidence of the accident to the boy occurring previously to plaintiff's injury, under what may be inferred to be substantially the same circumstances as the one now under discussion, was admissible for the consideration of the jury as tending to show (1) the cause of plaintiff's injury, (2) notice to defendant of the defective condition of the door and door check, (3) negligence on defendant's part in not having the door check placed in good working order. (*Wills* v. *Price,* 26 Cal.App.2d 338, 344 [79 P.2d 406] and cases cited.)

While defendant's argument would be apropos if the appeal were from a judgment rendered after the case had been fully tried, much of it is not applicable in discussing a nonsuit where all inferences and presumptions fairly arising from the evidence must be taken in favor of plaintiff.

To sustain the judgment defendant relies on *Olson* v. *Whitthorne & Swan,* 203 Cal. 206 [263 P. 518, 58 A.L.R. 129], where a nonsuit was affirmed in a swinging-door case. While that case involved the injury to the plaintiff by a swinging door the other features of the action are entirely different from those of the instant case. "There was no proof of negligence on the part of the defendant in the installation, maintenance, operation, or supervision of the doors, nor of any defect in anything connected therewith at the time of the accident." (P. 208.) The plaintiff was an adult; she was standing with her back toward the door and from 12 to 16 inches from it; she was not looking at the door before she was struck. The only witness besides the plaintiff was a building inspector called on her behalf who testified that when the door was opened it would rebound from 4 to 6 inches from the center line or closed position. Since the plaintiff stood from 12 to 16 inches

from the door the evidence did not sustain her claim that the door struck her on its rebound, which was not more than 6 inches. In the Olson case there was not, as there is in the instant case, any evidence (1) concerning the tension, function or operation of the door check; (2) as to whether the door struck the plaintiff by reason of its rebound or was pushed against her by someone who followed her through the doorway; (3) as to whether or not the door check was in good working order or in disrepair; (4) that any prior accident had occurred at the same place; (5) of facts from which notice of a dangerous condition could be imputed to the proprietor.

In *Dolan* v. *Growers Outlet, Inc.*, 129 Conn. 158 [26 A.2d 788], the court sustained a judgment for the plaintiff, holding that under the evidence the jury could reasonably have found that (1) the swinging door which injured her, having been released by another person, swung back with sufficient force to injure plaintiff, and (2) the door was not reasonably safe for use of plaintiff and other invitees because it was without sufficient restraining mechanism to cause it to stop or to reasonably retard the momentum of the backswing when released. In *Todd* v. *S. S. Kresge Co.*, 384 Ill. 524 [52 N.E.2d 206], where a verdict was rendered in favor of plaintiff and a judgment for defendant notwithstanding the verdict was reversed, it was held that by reason of evidence that door checks on the swinging door leading to defendant's store were defective and the prospective customer while exercising due care for her own safety was struck by the door, a case for the jury was presented. *Nersiff* v. *Worcester County Institution for Savings*, 264 Mass. 228 [162 N.E. 349], and *Norton* v. *Chandler & Co., Inc.*, 221 Mass. 99 [108 N.E. 897], both involving injuries caused by revolving doors, are alike in fact and in result. In each case the evidence showed (1) that adjustable friction strips of rubber and felt had been installed on the four wings of the door to prevent it from spinning (2) if used long enough and not readjusted, the friction strips would deteriorate and fail to connect with the door frame so as to check the speed of the door in revolving. In each case the court held the question whether the door had become unsafe because of the defendant's negligence in failing to make repairs and readjustments to the friction strips was a question for the jury to determine. In the Nersiff case the defendant's motion for a directed verdict was denied and judgment for the plaintiff was affirmed. In the Norton case a directed

verdict for the defendant was reversed and judgment entered for the plaintiff.

The owner of a place of business is obligated to exercise ordinary care to keep his premises in a reasonably safe condition for business visitors or to warn them of danger, and such duty is not limited to conditions actually known by the owner to be dangerous but extends to conditions which might have been found dangerous by the exercise of reasonable care. (*Blumberg* v. *M. & T. Incorporated,* 34 Cal.2d 226 [209 P.2d 1].)

MacVicar's knowledge of the accident to his grandson was sufficient to have caused him in the exercise of ordinary care (1) to ascertain the condition of the door and its appliances and (2) to have ordered the repair of the defective mechanism. Notice to MacVicar, manager of the bank, and his failure to exercise reasonable care are imputed to his employer, defendant bank.

Judgment reversed.

Moore, P. J., concurred.

McComb, J., deeming himself disqualified, does not participate herein.