[Civ. No. 23736. Second Dist., Div. Three. Dec. 30, 1959.]

MARY ELIZABETH FARRIER, Appellant, v. ALVIN LEVIN, Respondent.

Robert H. Lund for Appellant.

Ball, Hunt & Hart and Clark Heggeness for Respondent.

FORD, J.—Appellant appeals from a judgment of nonsuit in an action brought by her to recover damages arising out of an accident which, she alleged, occurred on October 27, 1956, in the liquor and delicatessen store operated by the defendant.

Mrs. Farrier, the plaintiff, testified that on the evening

of the accident she was returning from a friend's house and was near her own home when she met a Mrs. Roberts. Mrs. Roberts asked her if she would like to ride with her to a store. In response to a question on direct examination as to whether she was going for any purpose of her own, the plaintiff answered, "No. I just rode along to keep her company." They first went to a market and then to the defendant's liquor store. As to what happened at that store, the plaintiff testified as follows: "Well, as we walked in she stopped and we discussed a magazine on the rack. And there was a book out that she particularly was interested in; and I said it was good. I had read it. We were discussing that as we went back towards the rear of the store. As we got, well, opposite of the ice cream and soda container I slipped and fell. . . . Well, my right foot went out from under me . . ." She further said that after she fell she looked at the floor at that point and that there were brown spots on the floor. She described such spots in the following language: "There were spots on the floor, round spots I'd say, between a quarter and half dollar in size. And they were raised sticky-looking spots. They didn't belong to the floor or the asphalt tile; something on top of it. . . . One had a pushed-up area like something had gone through it." She further testified that the spot last described was in the vicinity of where her foot had gone out from under her. She then said that Mrs. Roberts helped her up, that they went to the back of the store and she told the clerk she had slipped on something on the floor and had hurt herself, that Mrs. Roberts completed her purchases, that the plaintiff bought nothing, and that they left the store. On cross-examination, Mrs. Farrier stated that she did not have her purse with her when she went into defendant's store. She further testified that the spots she saw after she fell were at least five or six in number and in an area of about 2 or 3 feet in size but which area was not "an exact circle."

In view of the issues raised on this appeal, it is not necessary to set forth herein Mrs. Farrier's testimony and that of her physician as to her injuries.

Testimony of the defendant was received pursuant to the provisions of section 2055 of the Code of Civil Procedure. He described the nature of his business as follows: ". . . we have both a delicatessen and alcoholic beverages, candy, ice cream, milk, bread and packaged meat, and sundries." He testified that the store was approximately 48 feet by 40 feet

in size. On the date of the accident, he said, there was a soft-drink cabinet adjacent to the ice-cream cabinet. He was not aware of any accident on October 27, 1956, which was a Saturday but, he testified, "Sometimes our busiest part of Saturday is between 4:00 to 9:00, yes, and at that time we usually keep three employees . . . working in the store." On that particular day, there were two employees and a "clean-up boy" in addition to the defendant himself. A maintenance man, who was an independent contractor, came in every Friday morning and scrubbed, cleaned and rewaxed the floor. As to the duties of the clerks with respect to keeping the aisles clean, Mr. Levin testified as follows: "The routine was, it was supposed to be clean at all times. What hours they did them or when it was done was up to the discretion of the employee, if it had to be done every five minutes or if it had to be done every hour. I would do it myself sometimes. I would sweep the floor. I still do. . . . Not an hourly schedule, no. I didn't pin any boy down to an hourly schedule or a set time scheduled to do it. They were just to do it as they saw it was necessary."

In answer to a question whether people purchase a bottle of pop from the soft-drink box and drink it there on the premises, Mr. Levin replied, "We discourage it on the premises, but we can't stop it. Everytime we see someone doing it we tell them please to do it outside. That has been our policy ever since we opened." He did not see anyone spill anything around the soft-drink box at any time on October 27, 1956, and no one mentioned any such incident.

Jeff Milledge, who was 16 years old, was called by the plaintiff as a witness pursuant to the provisions of section 2055 of the Code of Civil Procedure. On October 27, 1956, he was working for the defendant as a "box boy." He testified that he never mopped the floors but that he "swept once a night with a broom." The testimony of the witness upon which appellant particularly relies is his answer to the question whether, during the time he worked there, there were drippings from ice cream and from soft drinks in the area in front of the ice-cream cabinet and in front of the soft-drink cabinet. That answer was: ",There was always drippings from Coke, any kind of soda pop, and ice cream on the floor." He further testified that there was a bottle opener on the soft-drink cabinet in October, 1956. He heard about the accident when he returned from dinner on October 27, 1956. On cross-examination, the witness testified that his

employment with the defendant terminated in December, 1956, "about the 16th to the 18th," and that he had worked for the defendant a month to two months. He said that when he heard of the accident he "hadn't been working there too long" but that he had then been working there about a month. He further testified that what he had seen on the floor from time to time "would be in front of the cooler and in front of the ice cream." In response to a question as to what he saw there from time to time, he replied, "Just spillings of pop." He never wiped up such "spillings" and did not see anyone else do so. By "spillings" he meant liquid on the floor.

The witness Sidney Wulwick, who was called by the plaintiff, testified that he had a janitorial service and that the defendant was one of his customers. His service was performed on Friday of each week and consisted of completely cleaning the entire surface of the floor, removing the old wax, and applying a double coat of wax. The service was rendered more frequently during certain holiday periods. He testified, in substance, that if a soft beverage was dropped on the waxed floor, it would not penetrate the wax but that it would result in sugar being left on the floor which would tend to make the floor tacky and gummy.

At the close of the plaintiff's case, the defendant made a motion for a judgment of nonsuit based on the ground that the plaintiff was a mere licensee rather than an invitee and on the ground that the evidence failed to show any actual or constructive knowledge on the part of the defendant of the condition which was claimed by plaintiff to have been the cause of her injury. The trial court, relying on *Oldenburg v. Sears, Roebuck & Co.*, 152 Cal.App.2d 733 [314 P.2d 33], granted the motion.

"We may affirm a judgment of nonsuit only when, from a review of the evidence, we can say that, disregarding the fact that there may be a conflict therein, and giving full credit only to that portion of the evidence, whether produced by plaintiff or defendant, which tends to support the allegations contained in plaintiff's complaint, indulging in every legitimate inference which may be drawn from that evidence, the result is a determination that there is no evidence of sufficient substantiality to support a verdict for plaintiff if such verdict were given. . . . We are not authorized, and neither was the trial court, in determining a motion for a nonsuit, to weigh the evidence or judge of the credibility of witnesses."

*(Kersten* v. *Young,* 52 Cal.App.2d 1, 7-8 [125 P.2d 501].)

The first question to be determined on this appeal is whether the evidence was such as to permit the trier of fact to draw the conclusion that the plaintiff was an invitee or business visitor or whether, as a matter of law, she was a mere licensee. If she occupied the status of a mere licensee, the judgment of nonsuit must be affirmed because the defendant would then have owed her no duty to keep the premises in a safe condition but only the duty of abstaining from wilful or wanton injury. Of course, with respect to active conduct on his part, he would have the duty of exercising ordinary care for her protection. (*Oettinger* v. *Stewart,* 24 Cal.2d 133 [148 P.2d 19, 156 A.L.R. 1221]; *Robbins* v. *Yellow Cab Co.,* 100 Cal.App.2d 174 [223 P.2d 80].) In this case the accident was claimed to have been due to the condition of the premises rather than to any active conduct on the part of the defendant.

The question thus presented is whether an adult who merely accompanies a friend into a store where the friend intends to make a purchase may have the status of an invitee or business visitor. The question does not appear to have received extensive discussion in any appellate opinion in this state although in *Crane* v. *Smith,* 23 Cal.2d 288 [144 P.2d 356], a case involving injury to a child who accompanied her mother into a market,[1] it is broadly stated, at page 297, that: ''In order to be an invitee or business visitor, it is not necessary that the visitor should himself be upon the land for the purpose of the possessor's business but it is sufficient that he be on the premises for the convenience or necessity of one who is upon the land for such a purpose.''

In *Colombo* v. *Axelrad,* 45 Cal.App.2d 439, at page 442 [114 P.2d 425], is found the following: ''The undisputed evidence is that . . . [appellant's] agent called for her and her daughter-in-law and took them to appellant's premises to show them linoleum and rugs which Mrs. Colombo proposed to purchase for her son. The two women were both treated as customers and hence the trial court properly instructed the jury that Mrs. Colombo was an invitee if she entered the premises for the purpose of purchasing or because she was assisting her

---

[1]In comment d to section 332, Restatement of the Law of Torts, to which reference is hereafter made, it is said: ''So too, a child taken by a mother or nurse to a shop is a business visitor; and this is so irrespective of whether it is necessary for the customer to take the child with her in order to visit the shop.'' See also, note 44 A.L.R.2d 1319, and *Young* v. *Bank of America,* 95 Cal.App.2d 725, 728 [214 P.2d 106, 16 A.L.R.2d 1155].

daughter-in-law in the purchase of merchandise. There is no evidence which would have supported appellant's contention that Mrs. Colombo was a mere licensee.''

The problem has been discussed in other jurisdictions. In *Kennedy* v. *Phillips*, 319 Mo. 573 [5 S.W.2d 33], the defendant conducted a general store wherein he displayed and sold to the public salvaged or unclaimed freight which was delivered to him by railroad companies. The merchandise included a great variety of items described as being anything from ''automobiles to toothpicks.'' Under his contract with the railroads, the defendant could not sell to a railroad employee any goods so received except upon receiving special permission. The plaintiff, a railroad employee, was injured in the store. The court said, at page 37 [5 S.W.2d] : ''It must be conceded that Doyle was an invitee in defendant's store. While he knew that the particular kitchen sink he was invited to look at was sold, it is perfectly clear that he was in the market for a kitchen sink and wanted to buy one from the defendant, if defendant had one that suited him, either on the day in question or on some later day. His fixed purpose to purchase a kitchen sink was his sole reason for going to defendant's store. In our opinion, the status of Doyle on this occasion, if not controlling, sheds much light on the status of plaintiff. True plaintiff said that he knew nothing about kitchen sinks and had no intention of buying one, at that time, and that he went with Doyle to be 'sociable,' but it is also true that he went with Doyle, so he testified, because both Doyle and Fitzgerald, his superior officer, asked him to go. Doyle was a customer and, obviously, thought it was to his advantage to buy the article desired at defendant's store. With Doyle's mission fully explained to defendant's salesman, in charge of the store, Doyle and plaintiff, as well as Matheny and Fitzgerald, were *expressly invited* to go to the second floor of the store and inspect the kitchen sink. If it is reasonable to assume, and we think it is, that in the buying and selling of goods there is a mutual advantage and benefit to both buyer and seller, then the *business in hand*—that is, the inspection of the kitchen sink—was of mutual advantage and benefit to the customer, Doyle, and to the storekeeper, defendant. That plaintiff was there to assist Doyle in the inspection of the kitchen sink and thereby to assist defendant in the sale of a kitchen sink cannot be disputed. And defendant's salesman knew that plaintiff was there for that purpose. Moreover, this was a public store, where goods of all kinds were kept on display and for sale to

the general public, and where defendant *impliedly invited* the general public to come and look over his wares, in the hope of a sale. Had plaintiff escaped the unguarded elevator shaft, he might have become interested in a salvaged automobile or some other attractive article of merchandise, at a reduced price, and bought such article, after first obtaining permission to do so from his employer. It is our conclusion, therefore, that, under the facts referred to and the rule of law above stated, plaintiff was not only *constructively an invitee,* but was *actually invited* into defendant's store.''

A narrower view of the scope of the invitation held out by the proprietor of a retail store was taken in *Fleckenstein* v. *Great Atlantic & Pacific Tea Co.*, 91 N.J.L. 145 [102 A. 700, L.R.A. 1918C 179]. The plaintiff, a boy about 12 years old, accompanied a friend, who was about 15 years old, into the store. In upholding a judgment of nonsuit in the plaintiff's action to recover for injuries, the court said (102 A., at page 700) : ''Merchants invite the public to enter their stores to buy wares. It cannot be said that they invite the entrance of those who accompany them, but who have no intention of purchasing; such persons are mere licensees. While it may be that· they invite those to enter, who, after inspecting their wares, may become purchasers, such an invitation did not extend to young Fleckenstein, when he accompanied his friend Young into the store, as he (Fleckenstein) admittedly had no intention of purchasing anything.''

But later New Jersey cases have indicated a broader view as to the status of one accompanying a customer into a store. Thus, in *Lewin* v. *Ohrbach's Inc.*, 14 N.J. Super. 193 [82 A.2d 4], where the plaintiff accompanied her sister to defendant's store to assist her sister in purchasing a coat, while the denial of recovery was upheld because there was no showing of negligence, the court said, at pages 6-7 [82 A.2d] : ''The first question is whether plaintiff Beatrice Lewin was an invitee or a licensee. The defendant claims that she was a mere licensee, relying mainly on *Fleckenstein* v. *Great Atlantic & Pacific Tea Co.*, 91 N.J.L. 145 [102 A. 700, L.R.A. 1918C 179] (E. & A. 1917). The argument advanced is that a merchant's implied invitation to enter his shop extends only to a person entering with the intention of purchasing (*Fleckenstein* v. *Great Atlantic & Pacific Tea Co.*, above) ; a person entering with one who intends to make a purchase for him (*Feingold v. S. S. Kresge Co.*, 116 N.J.L. 146 [183 A. 170] (E. & A. 1936)) ; and a person entering for the purpose of inspecting the merchandise,

with at least a vague idea of buying if a suitable article is found (*MacDonough* v. *F. W. Woolworth Co.*, 91 N.J.L. 677 [103 A. 74] (E. & A. 1918)). But the sweep of the merchant's implied invitation is not so confined. Included in the implied invitation are persons who enter on a business having a potentiality for pecuniary profit to the merchant. *Cf.* Prosser on Torts (1941), ch. 14, § 79, p. 637; Salmond, Law of Torts (10th ed. 1945), p. 478; Restatement, Torts, §§ 332, 343, comment a. The Fleckenstein case, above, is not to the contrary. There, the proofs were that the injured plaintiff 'Charles Fleckenstein, Jr., aged about twelve years, accompanied his friend Anthony Young, who was about fifteen years of age, into defendant's store. Young intended to make purchases, and did so, but Fleckenstein did not intend to buy anything, in fact, bought nothing and merely accompanied his friend on the latter's business.' The court held that the plaintiff was not an invitee but merely a licensee, apparently because of the absence of any proof to show that the plaintiff entered on a business having a potentiality for pecuniary profit to the merchant. We find in our cases no disposition to give any broader scope to the holding in the Fleckenstein case. *Cf. Den Braven* v. *Meyer Brothers* (1949), 1 N.J. 470 [64 A.2d 219]; *Feingold* v. *S. S. Kresge Co.*, above; *MacDonough* v. *F. W. Woolworth Co.*, above. In the case before us, the injured plaintiff entered the shop in company with her sister, who intended to purchase, and for the purpose of aiding her sister in making the purchase. The business upon which she entered had a potentiality for pecuniary profit to the defendant; therefore, she was an invitee."

Again, in *Murphy* v. *Kelly*, 15 N.J. 608 [105 A.2d 841, 44 A.L.R.2d 1316], while the holding of the court was that the infant plaintiff who had accompanied her father on a business mission to the premises of the defendant was an invitee, the court made the following comment on the Fleckenstein case (105 A.2d, at p. 843) : "While the soundness of the reasoning underlying this decision might well be explored in the light of the philosophy of modern merchandising endeavors, where every visitor becomes a potential customer and every effort is made to induce passers-by to enter and 'look around,' so that when the anticipated and hoped for urge to purchase materializes, the shopper will be redirected to the same attractive premises by his recollection thereof, there is no occasion to re-appraise the principle employed as factually the case is not analogous."

The view expressed in the Restatement of the Law of Torts as to the concept of an invitee or business visitor is a rather restricted one since emphasis is placed on "a purpose directly or indirectly connected with business dealings" between the person entering the premises and the possessor thereof. Section 332 of that Restatement is as follows: "A business visitor is a person who is invited or permitted to enter or remain on land in the possession of another for a purpose directly or indirectly connected with business dealings between them." However, comment b to the section appears to support the concept that an invitation may be held out to the public as evidenced by the particular nature of the business. It is there said in part:[2] "In determining whether a particular person is a business visitor of a possessor of land, the important thing is the desire or willingness to receive that person which a reasonable man would understand as expressed by the words or other conduct of the possessor. It is immaterial that the person is one whom the possessor is not willing to receive as a business visitor if the possessor's words or other conduct are understood, and would be understood by a reasonable man, as indicating the possessor's willingness. The nature of the use to which the possessor puts his land is often sufficient to express to the reasonable understanding of the public or classes or members thereof a willingness or unwillingness to receive them. *Thus, the fact that a building is used as a shop gives the public reason to believe that the shopkeeper desires them to enter or is willing to permit their entrance not only for the purpose of buying but also for the purpose of looking at the goods displayed therein or even for the purpose of passing through the shop. This is so because shopkeepers as a class regard the presence of the public for any of these purposes as tending to increase their business.*" (Emphasis added.)

In comment c to section 332 are the following pertinent observations:[3] "It is not necessary that the visitor's purpose be to enter into immediate business dealings with the possessor. The benefit to the possessor may be indirect and in the future. Thus, those who enter a shop with no present purpose of buying but merely to look at the goods displayed, are business visitors of the shop. So, too, where the shopkeeper permits his shop to be used as a shortcut between two streets, those so using it are business visitors of the shopkeeper. In both

[2] 2 Restatement of the Law of Torts, p. 898.
[3] 2 Restatement of the Law of Torts, pp. 899-900.

cases the chance that the visitor, who comes out of mere curiosity or to save time, may see some article which he may stop or return to purchase is of sufficient advertising benefit to the shopkeeper to make the visit connected with his business."

Comment d to section 332 deals directly with visits incidental to business relations of the possessor of the premises and third persons. It is there said in part:[4] "It is not necessary that the visitor should himself be upon the land for the purposes of the possessor's business. The visit may be for the convenience or arise out of the necessities of others who are themselves upon the land for such a purpose."

Eminent authorities on the law of torts have been critical of section 332 of the Restatement of the Law of Torts. Dean Prosser has stated: "There is, however, an important conflict of opinion as to the definition of an invitee, as well as to whether certain visitors are to be included in this category. The argument turns on the fundamental theory as to the basis of the special obligation which is placed upon the occupier of the land. One theory, which has received approval from a number of legal writers, and has been adopted by the Restatement of Torts [§§ 332, 343, comment a], is that the duty of affirmative care to make the premises safe is imposed upon the man in possession as the price he must pay for the economic benefit he derives, or expects to derive, from the presence of the visitor;[5] and that when no such benefit is to be found, he is under no such duty. On this basis the 'business' on which the visitor comes must be one of at least potential pecuniary profit to the possessor.

"The application of the economic benefit theory has led to a good deal of what looks like legal ingenuity. Potential gain is not difficult to find in the case of one who enters a store to make a purchase, or forms such an intention after entering, or one who is shopping in the hope of finding something that he wants, or even one with the 'vague purpose of buying something if she saw anything she took a fancy to'—although obviously any such test is at the mercy of the plaintiff's own testimony as to his reasons. . . . The alternative theory, which appears to have been the earlier one, is that the basis of lia-

[4] 2 Restatement of the Law of Torts, p. 900.

[5] Cf. Schwerdtfeger v. State, 148 Cal.App.2d 335, at page 344 [306 P.2d 960]: "In California, the rule applicable to an invitor is that a duty is imposed on the person in possession of land as the price he must pay for the economic benefit he derives or expects to derive from the presence of the visitor [citations]. The benefit to the possessor does not have to be a monetary one [citations]."

bility is not any economic benefit to the occupier, but a representation to be implied when he encourages others to enter to further a purpose of his own, that reasonable care has been exercised to make the place safe for those who come for that purpose. This idea of course underlies the stress laid upon 'invitation' in so many of the cases; but, as in the case of the social guest, invitation is not enough without the circumstances which convey the implied assurance. When premises are thrown open to the public the assurance is ordinarily given.'' (Prosser, Torts (2d ed. 1955), § 78, pp. 453-455; see also Prosser, Selected Topics on the Law of Torts (1953), chap. V.) Professors Harper and James, after discussing the ''economic benefit'' test and the ''invitation'' test as to what constitutes an invitee and pointing out that in a great number of situations the two tests will yield the same result, state that: ''It is submitted that under the prevailing rule today, plaintiff may, and should be, classified as an invitee if either the economic benefit or the invitation theory is satisfied. . . . The invitation test does not deny that 'invitation' may be based on economic benefit, but it does not regard that as essential. Rather it bases 'invitation' on the fact that the occupier by his arrangement of the premises or other conduct has led the entrant to believe 'that [the premises] were intended to be used by visitors' for the purpose which this entrant was pursuing, 'and that such use was not only acquiesced in by the owner [or possessor], but that it was in accordance with the intention and design with which the way or place was adapted and prepared. . . .' Such arrangement or other conduct encourages people to enter the land with a sense of assurance that it has been prepared for their safety.'' (2 Harper and James, The Law of Torts (1956 ed.), § 27.12, pp. 1478-1479.)

In *Sears, Roebuck & Co.* v. *Donovan*, 137 A.2d 716 (D. C. Mun. App.), the plaintiff, an adult, went with her mother to defendant's store. She testified that she went to the store merely to accompany her mother and did not assist her in selecting her purchase, a rake. While standing in the aisle, the plaintiff was injured. The court rejected the defendant's contention that the plaintiff was a mere licensee. The court stated, at page 718, that the jury could have found that the daughter's presence assisted the mother in making the purchase but that: ''Aside from this, however, we think appellee's status as an invitee may be soundly based on other considerations. . . . In our opinion, she was an invitee from the time she entered the store because she was a potential customer.

We take judicial notice that appellant does not confine its sales to rakes and we think it beyond argument that modern merchandising recognizes the advantage to a storekeeper in having a potential customer enter the store. Therefore, we hold that even under the mutual advantage theory appellee was an invitee.''

In *Crown Cork and Seal Co. v. Kane,* 213 Md. 152 [131 A.2d 470], the Court of Appeals of Maryland took favorable cognizance of the views of Prosser and of Harper and James. At page 473 [131 A.2d] of that opinion, it is said: "The cases all recognize that an invitation may be express or implied, and there are many cases in which an invitation has been implied from circumstances, such as custom, the acquiescence of the owner in habitual use, the apparent holding out of premises to a particular use by the public, or simply in the general arrangement or design of the premises.'' The same concept is expressed in *Oettinger v. Stewart,* 24 Cal.2d 133, at page 136 [148 P.2d 19, 156 A.L.R. 1221] : "An invitation or permission to enter upon land need not be express but may be implied from such circumstances as the conduct of the possessor, the arrangement of the premises, or local custom.'' (See *Popejoy v. Hannon,* 37 Cal.2d 159, 167 [231 P.2d 484] ; *cf. Koppelman v. Ambassador Hotel Co.,* 35 Cal.App.2d 537, 541-542 [96 P.2d 196].)

 In the case now before the court, it cannot be said that the presence of the plaintiff upon the premises of the defendant was merely tolerated. (*Cf. Colombo v. Axelrad, supra,* 45 Cal.App.2d 439.) She was a potential customer and within the class of persons a merchant normally desires to have observe and inspect his merchandise, whether or not she was in a position to make a purchase on the particular evening. It was reasonable for her to assume that she was invited to enter the premises and that reasonable care had been taken to make the premises safe for her use. Taking the evidence in its most favorable aspect for the plaintiff, as we must do on this appeal, clearly she was not as a matter of law a mere licensee but the evidence would sustain the conclusion that she was an invitee or business visitor.[6]

---

[6] In a particular case there may be, of course, a conflict in the evidence as to the purpose of the plaintiff in visiting a retail store. Thus, in *Goldsmith v. Mills,* 130 Cal.App.2d 493 [279 P.2d 51], the plaintiff fell in a store of which her son was one of the proprietors and she contended that she had gone there to do some Christmas shopping. Defendants introduced evidence of a statement which she had made after the accident to the effect that she had only gone to the store to pay a social visit.

We turn now to the second issue presented which is the issue of negligence. ██ "Where the dangerous condition is brought about by natural wear and tear, or third persons, or acts of God or by other causes which are not due to the negligence of the owner, or his employees, then to impose liability the owner must have either actual or constructive knowledge of the dangerous condition or have been able by the exercise of ordinary care to discover the condition, which if known to him, he should realize as involving an unreasonable risk to invitees on his premises. His negligence in such cases is founded upon his failure to exercise ordinary care in remedying the defect after he has discovered it or as a man of ordinary prudence should have discovered it." (*Hatfield* v. *Levy Brothers*, 18 Cal.2d 798, 806 [117 P.2d 841].) ██ Such negligence may be established by circumstantial evidence, "which is nothing more than one or more inferences which may be said to arise reasonably from a series of proven facts." (*Hatfield* v. *Levy Brothers, supra*, at 805; *Jones* v. *Hotchkiss*, 147 Cal.App.2d 197, 202 [305 P.2d 129].) ██ Whether a dangerous condition had existed long enough for a reasonably prudent person to have discovered the peril is a question of fact and time limitations cannot be imposed since each case must be viewed in the light of its own circumstances. (*Louie* v. *Hagstrom's Food Stores*, 81 Cal.App.2d 601, 607-608 [184 P.2d 708]; *Lehman* v. *Richfield Oil Corp.*, 121 Cal.App.2d 261, 265 [263 P.2d 13].)

██ In the case presently before the court, the defendant testified that there was no set time-schedule with respect to the matter of cleaning the floor. His employee, Jeff Milledge, testified that he "swept once a night with a broom" but never mopped the floor. The plaintiff's testimony was that the spots which she saw on the floor were raised "sticky-looking" spots and that one had "a pushed-up area like something had gone through it." In the light of that testimony and of that of the maintenance man, Sidney Wulwick, as to the consequences of spilling beverages on a waxed floor, the trier of fact could draw the inference that the spots had been on the floor for some time. (*Louie* v. *Hagstrom's Food Stores, supra*, 81 Cal. App.2d 601, 608; *Travis* v. *Metropolitan Theatres Corp.*, 91 Cal.App.2d 664, 668 [205 P.2d 475]; *Lehman* v. *Richfield Oil Corp., supra*, 121 Cal.App.2d 261, 264; *Ahern* v. *S. H. Kress & Co.*, 97 Cal.App.2d 691, 699 [218 P.2d 108].)[7]

---

[7]In the Louie case, the court said, at page 608, as to the thick syrup which was on the floor on a cold day: "It is a reasonable inference that

But, aside from such circumstantial evidence which tended to show that the condition was not one of immediate origin or of short existence, there was before the trial court the testimony of the witness Jeff Milledge that in the area in front of the ice-cream and soft-drink cabinets "There was always drippings from Coke, any kind of soda pop, and ice cream on the floor." The defendant testified that while he discouraged customers who purchased a beverage obtained from the soft-drink box from drinking there on the premises, he could not stop it but that his policy was to tell any customer who was so drinking a beverage to do so outside. ■ While such testimony of Milledge and of the defendant was produced pursuant to section 2055 of the Code of Civil Procedure, such evidence is to be weighed for the plaintiff insofar as it is favorable and is to be disregarded insofar as it is unfavorable. (*Baley* v. *J. F. Hink & Son*, 133 Cal.App.2d 102, 108 [283 P.2d 349]; *Young* v. *Bank of America*, 95 Cal.App.2d 725, 729 [214 P.2d 106, 16 A.L.R.2d 1155].) ■ That evidence was sufficient to entitle the plaintiff to oppose successfully a motion for a judgment of nonsuit because where a business invitor has knowledge, actual or constructive, of a course of conduct of third persons on his premises which may endanger the safety of his invitees, he is under a duty to exercise ordinary care to forestall such injury. (See *Dillon* v. *Wallace*, 148 Cal.App.2d 447, 451 [306 P.2d 1044]; *Lehman* v. *Richfield Oil Corp.*, *supra*, 121 Cal.App.2d 261, 264; *Travis* v. *Metropolitan Theatres Corp.*, *supra*, 91 Cal.App.2d 664, 668; *Baley* v. *J. F. Hink & Son*, *supra*, 133 Cal.App.2d 102, 112; *cf. Jones* v. *Hotchkiss*, *supra*, 147 Cal.App.2d 197, 202; *Wiard* v. *Market Operating Corp.*, 178 Wash. 265 [34 P.2d 875, 877].)

*Oldenburg* v. *Sears, Roebuck & Co.*, *supra*, 152 Cal.App.2d 733, does not justify the action of the trial court in granting the motion for a judgment of nonsuit in this case. In that

---

for this heavy thick fluid to have seeped through the paper bag and to have formed a puddle of appreciable proportions would take a substantial period of time." In the Lehman case, the oily spot on the step of the telephone booth "was flat and had soaked in to some extent" (page 263). In the Travis case, the vomitus "had actually remained on the floor long enough to form a crust on its surface" (page 668). In the Ahern case, the court said, at page 699: ". . . we believe that the size, location, shape and nature of the puddle, together with the other facts and circumstances hereinbefore set forth, were sufficient to sustain the implied finding of the jury that it had taken the puddle a sufficient length of time to accumulate, so that defendants by the exercise of reasonable care should have discovered and remedied it."

case, the plaintiff fell when she stepped on a piece of chalk while she was walking on the sidewalk adjacent to the defendant's store. There was no evidence that the defendant had chalk in stock at that time or that it was responsible for its presence on the sidewalk. No showing was made that the defendant had actual knowledge of the presence of the chalk or that it had been there for any length of time so as to establish constructive knowledge of it. (See also *McKenney v. Quality Foods, Inc.*, 156 Cal.App.2d 349, 355 [319 P.2d 448].)

In the light in which the evidence must be viewed on a motion for a judgment of nonsuit, it is clear that the motion was improperly granted.

Reversed.

Shinn, P. J., and Vallée, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied February 24, 1960.