# IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

|  |  |  |
|---|---|---|
| DEBRA FULWILER, | ) | No. 69338-7-I |
| | ) | |
| Appellant, | ) | |
| | ) | DIVISION ONE |
| v. | ) | |
| | ) | |
| ARCHON GROUP, L.P., a foreign entity | ) | |
| WHITEHALL STREET REAL ESTATE, | ) | |
| L.P., a foreign entity, W2007 SEATTLE | ) | |
| OFFICE 10700 BUILDING REALTY, | ) | UNPUBLISHED OPINION |
| LLC, a Delaware limited liability | ) | |
| company; WA-10700 BUILDING, LLC, | ) | |
| a Delaware limited liability company; | ) | |
| CB RICHARD ELLIS, INC., a Delaware | ) | |
| Corporation; and BELLEVUE COLLEGE | ) | |
| (formerly BELLEVUE COMMUNITY | ) | |
| COLLEGE) (BCC)), a division of the | ) | |
| STATE OF WASHINGTON, | ) | |
| | ) | |
| Respondent. | ) | FILED: <u>December 23, 2013</u> |

SPEARMAN, A.C.J. — Deborah Fulwiler commenced this premises liability personal injury action to recover for injuries from a fall on a set of exterior steps at Bellevue College's north campus. The trial court granted the defendants' motions for summary judgment. Because there is sufficient evidence to raise issues of material fact regarding Fulwiler's claims, we reverse.

## FACTS

On September 5, 2008 at about 10:45 a.m., Debra Fulwiler and her friend visited an office building located at 10700 Northrup Way, Bellevue, Washington. Archon Group, Whitehall Street Real Estate, W2007 Seattle Office 10700 Building Realty, LLC, WA-10700 Building (collectively, Archon) owned the building. CB Richard Ellis, Inc. (CBRE) provided property management services. Bellevue College, (herein, BC) leased the building, inclusive of use of the exterior steps and parking lot.

Fulwiler testified at her deposition that she met her friend at BC in order to show her friend where to register for classes and to visit the bookstore before having lunch at another location. Fulwiler had previously taken a class at BC, but was not attending or registering herself for class at that time. In order to enter the building, both women climbed the staircase at issue in this case.

Both Fulwiler and her friend visited the bookstore and browsed for books. In a declaration filed in response to the defendants' motions for summary judgment, Fulwiler stated that her friend did make a purchase at the bookstore.[1] Fulwiler also stated that she had intended to purchase a book if she found something she liked, but, after asking a bookstore employee some questions about a book, she opted not to purchase it.

---

[1] The defendants moved the trial court to strike Fulwiler's declaration and the declarations of her experts, Thomas Baird and Gary Sloan, on the grounds that they contradicted Fulwiler's deposition testimony and thus could not be used to create an issue of material fact. But the order granting the defendants' summary judgment motions states that the court considered each of the declarations objected to, thus implicitly denying the motions to strike. The defendants did not cross appeal this ruling. Thus, Fulwiler's declaration and those of her experts are part of the record on review.

About 15 minutes later, Fulwiler and her friend emerged from the bookstore and headed toward their parked cars. Fulwiler's friend preceded her down the stairs without incident. Fulwiler testified that she walked down the upper section of the stairs herself without incident. Then, she "lost her balance and fell" on the lower section of the stairs. Clerk's Papers (CP) at 3. She further testified that: "you cannot hardly tell one step from the other here. And that's what I believe that's why I fell . . . . I couldn't see the step." [sic]. CP at 119. In her declaration, she stated that she relied heavily on the handrail while descending the stairs. She stated that she grasped the handrail and, as her foot was in motion leaving the first step, she naturally looked down for cues about where to place her foot on the next step. As she did so, the individual steps of the aggregate rock stairs blended together so that the steps were indiscernible from one another. Fulwiler fell down the stairs on the aggregate rock cement. Injuries to her ankle sustained in the fall left her permanently disabled after multiple surgeries.

Fulwiler commenced this action alleging that all defendants were negligent in maintaining the stairs and/or failing to warn of their unsafe condition.[2] Fulwiler's response to the defendants' motions for summary judgment, included

---

[2] In her complaint, Fulwiler also advanced a res ipsa loquitur theory, but abandoned it in her response to defendants' motions for summary judgment.

No. 69338-7-I/4

her declaration and detailed declarations from two experts.[3] The trial court granted the motions for summary judgment. Fulwiler appeals.

## DISCUSSION

We review summary judgment decisions de novo. Ranger Ins. Co. v. Pierce County, 164 Wn.2d 545, 552, 192 P.3d 886 (2008). Summary judgment is proper if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. CR 56(c). A genuine issue of material fact exists if "reasonable minds could differ on the facts controlling the outcome of the litigation." Ranger Ins. Co., 164 Wn.2d at 552 (citing Wilson v. Steinbach, 98 Wn.2d 434, 437, 656 P.2d 1030 (1982)). When determining whether an issue of material fact exists, the court must construe all facts and inferences in favor of the nonmoving party. Id.

Summary judgment is subject to a burden-shifting scheme. Id. The initial

---

[3] Thomas K. Baird, a safety expert, and the principal of Safety Systems America, Inc., submitted a declaration in this case. Mr. Baird opined that the subject stairs are "unreasonably hazardous and dangerous because there was no contrast on the nosings of the steps in order for Debra Fulwiler to adequately identify the step edge. This hazardous condition presented an unreasonable risk of injury to her as she walked down the stairs." CP at150-151. He further opined that this risk "was foreseeable such that the owner or occupier of the subject property should discover the condition through reasonable care, and should realize, not only that it involves an unreasonable risk to persons using the stairs, but that it is a danger that someone using the stairs would not realize and would not be prepared to protect themselves from." Id. He also stated that the stairs do not comply with the "American Society for Testing and Materials (ASTM) F1637-95 Standard Practice for Safe Walking Surfaces, . . . a nationally recognized consensus safety standard; that the rise and run of the stairway exceeded the 3/8" variance allowed under the 1979 Uniform Building Code (UBC); and opined that the excessive variance in the rise and run of the stairs may have been a contributing factor in Fulwiler's fall on the stairs. CP at 150-152.

Gary Sloan, Ph.D., a human factors expert, measured the luminance of the stairs and concluded, "there was little difference in brightness between the nosing of the middle landing and the tread of the step immediately below it . . . ." CP at 220. He stated that in his opinion there was "inadequate contrast" between the stair landing and the steps, and that the aggregate rock of the stairs created a camouflaging effect. CP at 220. In addition, Dr. Sloan opined that the height of the handrails of the stairwell may have contributed to Fulwiler's fall and the stairwell posed an unnecessary risk to pedestrians that should have been appreciated by defendants.

burden to show the nonexistence of a genuine issue of material fact is on the moving party. Id; see also Vallandigham v. Clover Park School Dist. No. 400, 154 Wn.2d 16, 26, 109 P.3d 805 (2005). For example, a defendant may move for summary judgment by showing that there is an absence of evidence to support the plaintiff's case. Sligar v. Odell, 156 Wn. App. 720, 725, 233 P.3d 914 (2010), review denied, 170 Wn.2d 1019, 245 P.3d 772 (2011) (citing Young v. Key Pharm., Inc., 112 Wn.2d 216, 225 n.1, 770 P.2d 182 (1989) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986))). Once this initial showing is made, the inquiry shifts to the plaintiff to "make a showing sufficient to establish the existence of an element essential to [its] case . . . ." Id. at 725 (citing Celotex, 477 U.S. at 322). In a negligence action, a plaintiff bears the burden of proving four basic elements: (1) the existence of a duty, (2) breach of that duty, (3) resulting injury, and (4) causation.[4] Coleman v. Hoffman, 115 Wn. App. 853, 858, 64 P.3d 65 (2003) (citing Tincani v. Inland Empire Zoological Soc'y, 124 Wn.2d 121, 127-28, 875 P.2d 621 (1994)). If any of these elements cannot be met as a matter of law, summary judgment for the defendants is proper.

Duty

The legal duty owed by a possessor of land to a person entering the premises depends on whether the entrant falls under the common law category

---

[4] It is undisputed that Fulwiler's evidence was sufficient to withstand summary judgment on the elements of cause in fact and injury.

5

of a trespasser, licensee, or invitee.[5] See, Younce v. Ferguson, 106 Wn.2d 658, 662, 724 P.2d 991 (1986). A business invitee is "'a person who is invited to enter or remain on land for a purpose directly or indirectly connected with business dealings with the possessor of the land.'" Beebe v. Moses, 113 Wn. App. 464, 467, 54 P.3d 188 (2002) (quoting RESTATEMENT (SECOND) OF TORTS § 332 (1965)). It is well established that an actual sale need not take place for a potential customer to be considered a business invitee. Kinsman v. Barton & Co., 141 Wash. 311, 314, 251 P. 563 (1926) (even a "window shopper" is a business invitee, and visitors to a store are business invitees even if they do not make a purchase, the mere possibility of a future purchase being sufficient). An indirect business purpose on the property is sufficient for classification as a business invitee. RESTATEMENT (SECOND) OF TORTS § 332 (1965) comment f ("It is not necessary that the visitor's purpose be to enter into immediate business dealings with the possessor. The benefit to the possessor may be indirect and in the future."); see, e.g., Fuentes v. Port of Seattle, 119 Wn. App. 864, 868-69, 82 P.3d 1175 (2003) (A motorist, who was a victim of carjacking while waiting to pick up passenger disembarking from airplane at airport, was an invitee, not a mere licensee because the motorist's purpose for being at the pick-up drive was connected to airport business, and port authority provided pick-up drive for specific purpose for which she was there).

---

[5] Bellevue College contends that we may only consider Fulwiler's complaint and deposition testimony to determine her status in relation to her visit to the bookstore. It then argues that based on that evidence, Fulwiler's status is that of a licensee. As indicated above, the trial court implicitly denied the motion to strike the declarations of Fulwiler and her experts and Bellevue College did not appeal this ruling. Thus, on appellate review we consider the entire record that was before the trial court.

Moreover, a person who enters land incidental to business relations of the possessor and a third party is also a business invitee. RESTATEMENT (SECOND) OF TORTS § 332 (1965) comment g ("*Visits incidental to business relations of possessor and third persons.* It is not necessary that the visitor shall himself be upon the land for the purposes of the possessor's business. The visit may be for the convenience or arise out of the necessities of others who are themselves upon the land for such a purpose. Thus those who go to a hotel to pay social calls upon the guests or to a railway station to meet passengers or bid them farewell, are business visitors, since it is part of the business of the hotelkeeper and railway to afford the guest and passengers such conveniences. So too, a child taken by a mother or nurse to a shop is a business visitor; and this is true irrespective of whether it is necessary for the customer to take the child with her in order to visit the shop.") see also, Farrier v. Levin, 176 Cal.App.2d 791, 1 Cal. Rptr. 742 (1959) (person accompanying friend into store where friend intended to make a purchase was an invitee); Gustafson v. Mathews, 109 Ill.App.3d 884, 441 N.E.2d 388 (1982) (children accompanying father to tavern were invitees in tavern parking lot).

Here, Fulwiler stated in her declaration that she intended to purchase a book if she saw one she liked, and asked a bookstore employee about a book. Although she did not make a purchase herself, she was, at least arguably, "window shopping." She also testified to facts establishing that her visit to the property was incidental to business relations between the possessor and a third person, namely the sale of the book to her friend at the BC bookstore.

Additionally, Fulwiler's other purpose for entering the property (to facilitate her friend's enrollment in a course), which is undisputed by the parties, arguably, albeit indirectly, conferred a business benefit on BC, whose primary mission and purpose is to provide such educational course offerings to the community. These facts, if believed by a jury, are sufficient to establish Fulwiler's status as a business invitee.

A possessor of land is liable to invitees for injury-causing conditions if he or she:

> "(a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and
> (b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and
> (c) fails to exercise reasonable care to protect them against the danger."

Tincani, 124 Wn.2d at 138, (quoting RESTATEMENT (SECOND) OF TORTS § 343 (1965)). However, the duty only arises if and when the first condition is met. See, Iwai v. State, 129 Wn.2d 84, 93-95, 915 P.2d 1089 (1996). Archon, CBRE and BC assert that Fulwiler fails to establish either actual or constructive notice.

Fulwiler concedes there is no evidence that the defendants had actual notice of the alleged dangerous condition but argues that the evidence is sufficient to establish constructive notice. Constructive notice arises when a dangerous condition "'has existed for such time as would have afforded [the possessor] sufficient opportunity, in the exercise of ordinary care, to have made a proper inspection of the premises and to have removed the danger.'" Ingersoll v. DeBartolo, Inc., 123 Wn.2d 649, 652, 869 P.2d 1014 (1994) (quoting Smith v.

Manning's, Inc., 13 Wn.2d 573, 580, 126 P.2d 44 (1942)). "Ordinarily, it is a question of fact for the jury, whether under all of the circumstances, a defective condition existed long enough so that it would have been discovered by an owner exercising reasonable care." Morton v. Lee, 75 Wn.2d 393, 397, 450 P.2d 957 (1969) (quoting Presnell v. Safeway Stores, Inc., 60 Wn.2d 671, 374 P.2d 939 (1962)). "Constructive notice to the [defendant] may be inferred from the elapse of time a dangerous condition is permitted to continue when it is long enough to be able to say that [the defendant] ought to have known about the condition. Holland v. City of Auburn, 161 Wash. 594, 297 P. 769 [(1931)]." Nibarger v. City of Seattle, 53 Wn.2d 228, 332 P.2d 463 (1958) (holding that, as a matter of law, the passage of 15 hours after formation of a dangerous condition of accumulated snow and ice is insufficient to constitute constructive notice, but noting that the passage of six or seven days raises a jury question).

In the present case, the defendants do not claim to have performed regular inspections or maintenance of the stairs in question or that they could not have reasonably been expected to discover the alleged dangerous condition. They point to photographs of the stairs and argue simply that the stairs were not unsafe. Thus, they contend there was nothing for them to take notice of or to warn Fulwiler about. They also rely on the fact that no prior incidents of similar falls had been reported. In response, Fulwiler contends that she has presented sufficient evidence to create an issue of material fact on whether, in the exercise of ordinary care, the defendants should have discovered the alleged unsafe condition. She points to the approximately 25 years the stairs had been in

9

existence and the expert testimony regarding the stairs' condition and the ability to reasonably ascertain the danger they presented. We agree this evidence is sufficient to create a factual dispute about whether the condition of the stairs was unsafe and if so, whether the defendants should have been on notice of that condition.

The defendants also argue that, even if they had notice, they had no duty to warn Fulwiler because the alleged unsafe condition was open and obvious. Where an alleged unsafe condition is both obvious and known to the plaintiff, the defendants owe no duty to warn of this condition. Mele v. Turner, 106 Wn.2d 73, 80, 720 P.2d 787 (1986); Seiber v. Poulsbo Marine Center, Inc., 136 Wn. App. 731, 740, 150 P.3d 633 (2007). But an exception to this rule may apply, where it is shown that the defendant should anticipate harm to the invitee, notwithstanding such knowledge or obviousness. See e.g., Suriano v. Sears, Roebuck & Co., 117 Wn. App. 819, 72 P.3d 1097 (2003); Degel v. Majestic Mobile Manor, Inc., 129 Wn.2d 43, 50, 914 P.2d 728 (1996). In this circumstance, the defendant may owe an additional duty to remove or warn of the danger regardless of its obvious nature. Tincani, 124 Wn.2d at 139-40. "Distraction, forgetfulness, or foreseeable, reasonable advantages from encountering the danger" are factors which trigger a responsibility to warn of, or make safe, known or obvious dangers. Id., at 140. Whether the possessor should anticipate such harm is a question for the jury. Maynard v. Sisters of Providence, 72 Wn. App. 878, 866 P.2d 1272 (1994).

Fulwiler successfully raised a genuine issue of material fact on the issue of constructive notice. The determination of whether the alleged dangerous condition was open and obvious and, if so, whether the defendants should nonetheless have anticipated injury from the condition, were questions for the jury.

### Breach

As discussed above, a possessor of land breaches the duty of care owed to invitees if the possessor has actual or constructive notice of an unsafe condition and fails to exercise reasonable care to protect the invitee against the danger. Iwai, 129 Wn.2d at 93-94 (citing RESTATEMENT (SECOND) OF TORTS § 343 (1965)). Reasonable care requires a landowner to inspect for dangerous conditions, "'followed by such repair, safeguards, or warning as may be reasonably necessary for [the invitee's] protection under the circumstances.'" Tincani, 124 Wn.2d at 139 (quoting RESTATEMENT (SECOND) OF TORTS § 343, cmt. b).

Here, Fulwiler offers two expert reports detailing the potential perils of the staircase, the various nonconformities with building codes, and several relatively easy repairs the defendants could have made to protect their invitees. In response, the defendants note that "[t]he lack of yellow paint at the front of each step does not, as a matter of law, render a staircase unreasonably dangerous. Staircases that are all the same color or texture are ubiquitous in King County & Seattle." Brief of Respondents, Archon and CBRE at 15 (citing CP at 254-66). While it may generally be true that the lack of distinguishing colors or textures on

steps does not make them, as a matter of law, "unreasonably dangerous," it is a factual determination for the jury whether the lack of such demarcation, or other safeguards or warnings, made the specific staircase in this case unreasonably dangerous. We conclude that Fulwiler sufficiently established the breach element of her claim to withstand summary judgment.

Proximate Cause

The issue of proximate cause is generally a question of fact for the jury and not subject to determination at summary judgment as a matter of law. Ruff v. County of King, 125 Wn.2d 697, 703-04, 887 P.2d 886 (1995); Bernethy v. Walt Failor's Inc., 97 Wn.2d 929, 935, 653 P.2d 280 (1982). Because the question of proximate cause is for the jury, "it is only when the facts are undisputed and the inferences therefrom are plain and incapable of reasonable doubt or difference of opinion that it may be a question of law for the court." Bernethy, 97 Wn.2d at 935. However, summary judgment is proper where the plaintiff lacks evidence that her injuries stemmed from the defendant's negligence. Little v. Countrywood Homes, Inc., 132 Wn. App. 777, 133 P.3d 944 (2006).

Circumstantial evidence is sufficient to establish a prima facie case of negligence, if it affords room for reasonable minds to conclude that there is a greater probability that the conduct relied upon was the proximate cause of the injury than there is that it was not. Hernandez v. Western Farmers Ass'n, 76 Wn.2d 422, 426, 456 P.2d 1020 (1969). But, the nonmoving party may not rely on mere speculation or argumentative assertions that unresolved factual issues remain. Marshall v. Bally's Pacwest, Inc., 94 Wn. App. 372, 377, 972 P.2d 475

12

(1999). A cause of action may be said to be speculative when, from a consideration of all of the facts, it is as likely that it happened from one cause as another. Rasmussen v. Bendotti, 107 Wn. App. 947, 959, 29 P.3d 56 (2001).

Citing Reese v. Stroh, 128 Wn.2d 300, 309, 907 P.2d 282 (1995), the defendants assert that Fulwiler offers only a speculative explanation of what caused her injury, and that such speculation is not enough to establish proximate cause on summary judgment. They argued in her testimony that she "did not know" how she fell likens her case to Seiber, 136 Wn. App. 731, Little, supra., and Gardner v. Seymour, 27 Wn.2d 802,809, 180 P.2d 564 (1947). These cases are not controlling.

In Seiber, the plaintiff suffered injuries under similar circumstances to those present here: she fell down some steps leading from a boardwalk to the street. Seiber claimed the stairs posed an unreasonable risk of harm because they lacked distinguishing colors or textures and were otherwise out of compliance with building codes. Seiber could not recall any of the specifics of how she fell, nor did she claim any specific breach on part of the defendants. Her theory of the defendant's negligence was that "'[i]f everything would have been right, [she] wouldn't have fallen.'" Id. at 734. Seiber did not sue the possessor or owner of the property in question (the boardwalk). Rather, she sued the possessor and owner of the adjacent building, where she had been shopping prior to her fall. Id. at 733. We held that a person in control of a property abutting a public sidewalk is not an insurer of pedestrian safety and affirmed summary

judgment on the basis that Seiber failed to establish duty and breach. We never reached Seiber's claims that she established proximate cause.

In Little, the plaintiff was a contractor's employee who had been injured in a fall from a ladder. He had no memory of the accident and offered no witness testimony as to the cause of his injury. We affirmed the trial court's summary judgment for the contractor, holding that he failed to establish proximate cause because he did not present any evidence that would have allowed a reasonable person to infer, without speculating, that the contractor's negligence was more probably than not what caused the accident. Id. at 780-81.

In Gardner, our Supreme Court upheld summary judgment for the defendant where the plaintiff failed to offer any evidence to support her theory of the defendant's negligence in causing the accident. In Gardner, an employee had fallen down a freight elevator shaft and died. Id. No one witnessed the employee's fall. Id. His widow sued the employer. Id. The widow asserted that the employee fell through open doors after another employee had manipulated the cables to move the elevator to another floor. Id. at 806. The Court found, in the absence of supporting evidence or testimony, it was equally likely that he could have been manipulating the cables himself, lost his balance, and fallen into the empty shaft. Id. The Court held that "'no legitimate inference can be drawn that an accident happened in a certain way by simply showing that it might have happened in that way, and without further showing that it could not reasonably have happened in any other way.'" Id. at 810 (quoting Whitehouse v. Bryant Lumber & Shingle Mill Co., 50 Wash. 563, 565, 97 P. 751 (1908)).

14

In Little and Gardner, the plaintiffs offered no evidence of why the injured party fell (the cause of the injuries). They could not provide any such evidence because the injured party either did not remember what happened or was deceased and there were no witnesses. Accordingly, their claims were dismissed because the plaintiffs' theory of the defendant's negligence was based on mere speculation. See also, Marshall, 94 Wn. App. at 378-80 (affirming summary judgment for failure to establish proximate cause where plaintiff could not remember the circumstances surrounding her fall from a treadmill and resulting head injury, and offered no theory explaining that her injuries resulted from the breach of a duty by health club, treadmill manufacturer, or treadmill repairer.)

In contrast, Fulwiler does offer evidence of why she fell. She testified that she fell because she was unable to distinguish one step from another; she elaborated on this testimony in her declaration. She also presented two expert declarations that corroborate her assertion that the steps were difficult to distinguish and opine that this condition probably contributed to her fall. This evidence is sufficient to create a factual dispute about the reason for Fulwiler's fall and whether the defendants breached their duty to exercise reasonable care in maintaining the steps and/or warning pedestrians. We find that Fulwiler made a sufficient showing of proximate cause to withstand summary judgment.

## Conclusion

Because Fulwiler successfully raised a genuine issue of material fact as to the disputed elements of her claim, it was error to grant the defendants' motions for summary judgment.

Reversed.

WE CONCUR:

Spearman, A.C.J

Schindler, J

Appelwick, J