Marshall, C. J.
 

 In the disposition of this case three legal propositions must be discussed: First, whether a privately owned but publicly operated hospital, either endowed or supported largely by public beneficence, is exempt from liability for the negligence of its agents and servants; second, is such a hospital relieved from liability for damages caused by the negligence of its agents and servants, where it is shown that those in charge of the hospital have exercised due care and caution in the selection of such agents and servants; third, is there any exemption from the liability of such a hospital at the suit of any one other than a patient while receiving treatment therein?
 

 The first two propositions may be discussed together; and it is not necessary to do more than to briefly refer to three earlier decisions of this court. In
 
 Taylor, Admr.,
 
 v.
 
 Protestant Hospital Assn.,
 
 85 Ohio St., 90, 96 N. E., 1089, 39 L. R. A. (N. S.), 427, the petition was filed on behalf of a patient who had been treated in a public and charitable hospital. The action was grounded upon the alleged negligence of a nurse, and the petition contained no allegation of failure to exercise due care in the selection of the nurse. The patient was a pay patient, who was received at the hospital for the purpose of an opera
 
 *55
 
 tion. The answer alleged that the defendant was a public and charitable corporation, without capital stock, and operated without profit either to the corporation or its members, and that its funds and income were derived from donations, devises, and bequests by benevolent persons, and that the hospital was open to all persons applying for its benefits to the limit of its accommodations. A demurrer to this answer was overruled, and, the hospital not desiring to further plead, judgment was entered in favor of the hospital. This judgment was affirmed by this court, and in the syllabus it was broadly stated that the fact that a public charitable hospital received pay from a patient does not affect its character as a charitable institution, nor its rights and liabilities, as such, in relation to such patient. It was further declared that a public charitable hospital organized as such, and open to all persons, though conducted under private management, was not liable for injuries to a patient resulting from the negligence of a nurse employed by it. In
 
 Taylor
 
 v.
 
 Flower Deaconess Home &
 
 Hospital, 104 Ohio St., 61, 135 N. E., 287, 23 A. L. R., 900, it was alleged and proven that the hospital had failed to exercise due and reasonable care in the selection of physicians, nurses, or attendants, and that the injuries complained of resulted from the incompetence or negligence of such persons. This court declared that the hospital was liable to a patient under such circumstances. The opinion exhaustively reviews the authorities, citing and quoting from the cases which exempt public charitable hospitals from liability as well as from those which hold such hospitals liable to patients for the negligence of agents
 
 *56
 
 and servants, where the hospital authorities have not exercised due and reasonable care in the selection of such agents and servants. Upon such review this court declared the rule of liability for negligence in the selection of incompetent agents and servants. The hospital corporation in that case was a public charitable institution, and it conclusively follows from the declaration of that principle that this court in that case rejected the doctrine of complete exemption of such institutions from liability for negligence.
 

 The principles of the two
 
 Taylor cases
 
 were briefly reviewed and reaffirmed in
 
 Rudy
 
 v.
 
 Lakeside Hospital,
 
 115 Ohio St., 539, 155 N. E., 126, in which case a public charitable hospital was exempted from liability for loss of property due to the negligence of a servant of the hospital, and where it was not shown that the hospital authorities had failed to exercise due care in the selection of the servant. The only difference between the
 
 Rudy case
 
 and the first
 
 Taylor case
 
 was that in the
 
 Taylor case
 
 the damages were to the person and in the
 
 Rudy case
 
 the damages were to property.
 

 It is the policy of the law in all jurisdictions to safeguard trust funds devoted to charitable uses and purposes, in the sense that a court of equity will be diligent to prevent trust funds from being squandered or misappropriated to unauthorized uses, or willfully diverted to projects foreign to the trust, and the trustee may be individually held accountable for its restoration in the event of its negligent dissipation. It is a corollary to that proposition that in general the fund cannot be indirectly diverted by the tortious or negligent acts of the trus
 
 *57
 
 tees or their agents, where those who are beneficiaries of the fund are the victims of the tortions or negligent acts. By some of the authorities the ground upon which the liability is denied is that the beneficiary assumes the risks attendant upon the service. In one authority it is said that one who accepts the benefit of the charity enters into a relation which exempts a benefactor from liability for the negligence of his servants in administering the charity. In still another case, exemption is grounded upon the doctrine of implied waiver. It is not necessary to choose between these theories, all of which are consistent with each other. This court is committed, by the three cases already cited, to the doctrine of liability to a beneficiary only for the failure to exercise due care in the selection of servants. By the fact of affirming the liability to a beneficiary for negligence in selecting a servant, as in the second
 
 Taylor case,
 
 it follows that this court has impliedly repudiated the doctrine of complete exemption of charitable institutions. If any liability against the charitable institution for negligence is recognized upon any ground it destroys the theory of general exemption.
 

 We have so far discussed this case from the standpoint of a beneficiary. But this has only been for the purpose of determining whether funds given or bequeathed to a charity may be made to respond for the negligence of the agency which administers charity.
 

 Having reached the conclusion that the fund is not exempt, it only remains to discuss the third legal proposition, whether there can be a recovery, at the suit of one other than a patient receiving treatment
 
 *58
 
 in a hospital, for damages caused by the negligence of a servant. It is due to considerations of public policy that a patient in a charity hospital is held to have assumed the risks of the service, but it does not follow that the same considerations of public policy preclude a stranger from recovering compensation for damages caused by the negligence of a servant. Fully recognizing the soundness of the policy of partial exemption, there are other considerations of public policy which are equally important. No valid reason is apparent for granting immunity to a charitable institution for the negligence of its servants, and. for placing the entire responsibility of an injury upon innocent third persons and their families. Charitable institutions are frequently conducted upon a large scale, with all modern conveniences and appliances of a highly complicated nature, which enormously increase the risk of injury to operatives and strangers, and any doctrine of complete exemption would lead to carelessness, neglect, and injury to both person and property. While su,ch institutions should be encouraged, and those who are charitably inclined should likewise be encouraged to support them, this encouragement must not be carried to the point where injustice will be done to others. Innocent persons should not suffer through another’s fault. It is believed that the duty to exercise care to prevent injury to strangers will result in the exercise of greater care to patients, and the converse of this proposition is equally true that any encouragement to negligence toward strangers will inevitably be reflected to service rendered to beneficiaries of the charity.
 

 
 *59
 
 Having discussed the matter upon principle, a brief reference will be made to the authorities which support this view. In
 
 Geiger
 
 v.
 
 Simpson M. E. Church,
 
 174 Minn., 289, 219 N. W., 463, 62 A. L. R., 716, the church officers were negligent in permitting a piano to become out of repair, so that it easily-toppled over and fell upon one of the members of the church. The church was held liable on the ground that “charitable institutions, in this state, are liable for the negligence of their officers and employees on the same basis as other corporations and individuals.” In
 
 Hordern
 
 v.
 
 Salvation Army,
 
 199 N. Y., 233, 92 N. E., 626, 32 L. R. A. (N. S.), 62, 139 Am. St. Rep., 889, the same principle was declared as in the Minnesota case. The injured person was a mechanic called to mate repairs on a boiler on the defendant’s premises. The accident occurred through the defective condition of a runway or stage leading from a door in the boiler room. While the judgment was reversed in that case, the reversal was based upon evidence rather than law. In
 
 Basabo
 
 v.
 
 Salvation Army,
 
 35 R. I., 22, 85 A., 120, 42 L. R. A. (N. S.), 1144, plaintiff brought action against the Salvation Army for the death of his minor daughter, who was run over by a team and wagon while it was engaged in collecting supplies for the institution, and, after an elaborate discussion of authorities, the court reached the conclusion that ‘ ‘ a charitable corporation is liable for injuries to third persons caused by the negligence of its servants in the care and management of its horses and teams, while employed for its purposes, even though there has been no lack of care or diligence on its part in the selection or retention of such servants.” This prin
 
 *60
 
 ciple goes farther than this court was willing to go in
 
 Rudy
 
 v.
 
 Lakeside Hospital, supra.
 
 There is, however, the distinction that Mrs. Rudy was a hospital patient. In
 
 Bruce
 
 v.
 
 Central M. E. Church,
 
 147 Mich., 230, 110 N. W., 951, 954, 10 L. R. A. (N. S.), 74,11 Ann. Cas., 150, plaintiff was an employee of a contractor engaged in decorating the church building, and sued for injury sustained by reason of the breaking of defective scaffolding furnished by the agents of the church society. The court reached the conclusion that “corporations administering a charitable trust, like all other corporations, are subject to the general laws of the land, and cannot, therefore, claim exemption from responsibility for the torts of their agents.” In
 
 Hospital of St. Vincent
 
 v.
 
 Thompson,
 
 116 Va., 101, 81 S. E., 13, 51 L. R. A. (N. S.), 1025, a person who accompanied a patient to the hospital suffered injuries by falling into an elevator shaft, and in affirming a recovery the court declared: “One who, upon request of a sick friend, accompanies him to a charity hospital for treatment is an invitee and not a mere licensee, and the hospital owes him the duty to exercise ordinary care to have its premises in a reasonably safe condition for the visit, and if it negligently fails to perform that duty, and, as a proximate consequence thereof, the invitee, while exercising due care, is injured, then the hospital is liable for the injury sustained.” In
 
 Hewett
 
 v.
 
 Woman’s Hospital Aid Assn., 73 N.
 
 H., 556, 64 A., 190, 7 L. R. A. (N. S.), 496, a nurse had been assigned by the hospital management to a case where she was exposed to a contagious disease, without warning. She was a pupil nurse, under a contract by which she was to be trained as a nurse and receive $10 per month. It was held that:
 

 
 *61
 
 “A charitable corporation which is engaged in the maintenance of a hospital, and which holds its property for that general purpose, is liable for injuries resulting from a negligent failure to warn its servant concerning dangers of the employment.
 

 “Evidence that the manager of a hospital, being informed concerning the contagious character of a patient’s disease, failed to disclose the nature of the malady to the nurse in charge of the case, who was ignorant of the danger, warrants a finding of negligence on the part of the corporation.”
 

 Other cases have been cited by counsel which are not directly in point and will not therefore be discussed. We have not been cited to any cases declaring a contrary doctrine, except those cases which hold charitable institutions to be completely immune from liability for negligence.
 

 In the view we have taken of the case, it is not necessary to determine whether or not there was any evidence tending to show a want of care in the selection of the servant who operated the elevator. We are in accord with the numerous cases which treat charitable institutions on the same basis as other corporations and individuals as to liability for negligence to strangers and invitees who are lawfully upon the premises of the institution.
 

 The judgment of the Court of Appeals, reversing the judgment of the court of common pleas, will be affirmed, and the cause remanded to the court of common pleas for a new trial.
 

 Judgment affirmed.
 

 Kinkade, Day and Allen, JJ., concur.
 

 Robinson, J., concurs in proposition 2 of the syllabus and in the judgment.