A94A2102. RESTAURA, INC. et al. v. SINGLETON.

(456 SE2d 219)

RUFFIN, Judge.

In this premises liability case, appellants Restaura, Inc. f/k/a Greyhound Food Management ("GFM") and Burger King Corporation ("Burger King") appeal from the trial court's denial of their motion for summary judgment.

Appellee, Sally Singleton, was on her way to the ticketing area in the Greyhound bus terminal where her husband was purchasing a ticket when she slipped and fell on a greasy area of a walkway behind the back door of a Burger King restaurant located at the terminal. The area where she fell was owned by Greyhound Lines, Inc. ("Greyhound") and jointly used and maintained by Greyhound, Burger King and GFM.

1. Burger King and GFM contend that the trial court erred in denying their motion for summary judgment because Singleton was a licensee and there is no evidence that her injuries were caused by their wilful and wanton conduct. We disagree.

"The liability of [GFM and Burger King] depends upon whether [Singleton] at the time [she] suffered [her] injury, was a licensee or an invitee. Under OCGA § 51-3-2, the owner or proprietor of the premises is liable only for wilful or wanton injury to a licensee, whereas under OCGA § 51-3-1 the landowner or occupier owes an invitee the duty to exercise ordinary care in keeping the premises safe.

"To determine whether a person is an invitee or a mere licensee, the nature of his relation or contact with the owner or occupier of the premises must be determined. The test is 'whether the injured person *at the time of the injury* had *present* business relations with the owner of the premises which would render his presence of mutual aid to both, or whether his presence on the premises was for his own convenience.' " (Citation and punctuation omitted.) *Armstrong v. Sundance Entertainment,* 179 Ga. App. 635 (347 SE2d 292) (1986) (citing *Atkins v. Tri-Cities Steel,* 166 Ga. App. 349, 350 (304 SE2d 409) (1983)).

In the instant case, the area where Singleton fell was owned by Greyhound and jointly used and maintained by Greyhound, GFM and Burger King. Although Singleton contends that GFM and Burger King occupied the terminal to provide food to Greyhound passengers, she cites nothing in the record to support this. The record is clear that the reason Singleton was on the premises was her husband's

travel, and since there is nothing to suggest that at the time of her injury Singleton had any present business relations with GFM or Burger King, we must conclude that she was a licensee.

Accordingly, the only duty owed to Singleton by GFM and Burger King "was to refrain from 'wilful or wanton' injury, from deliberate acts or omissions and those that warrant an inference of conscious indifference to consequences." (Citations omitted.) *Stanfield v. Kime Plus*, 210 Ga. App. 316, 317 (436 SE2d 54) (1993). In support of its motion for summary judgment on this issue, Burger King and GFM filed an affidavit of Burger King manager Bill Taylor. Taylor's affidavit established that Burger King was aware that spilled grease was dangerous, as Burger King required its employees to inspect the area behind the restaurant's back door for "trash or spillage or conditions which could cause harm to others. . . ." Similarly, the affidavit stated that it was Burger King's policy for employees to clean grease discovered around the Burger King operations at the terminal "so as to eliminate accidents such as the one at issue here."

In addition, Taylor averred that it was the policy of Greyhound and Burger King that "nothing was to be stacked or stored out behind the back door area of the [restaurant], and all trash and refuse of Burger King was stored inside the back door until it was transported to the trash compactors."

In opposition to the motion, Singleton presented affidavits from three individuals who swore that on various occasions, including the day of the incident, they saw a number of garbage bags stacked outside Burger King's back door which were leaking grease onto the sidewalk where Singleton fell. The first affidavit came from an individual unrelated to Singleton who was present when she fell. This person also stated that the leaking garbage bags made the walkway very slippery but that the grease was not noticeable because it was clear. Another affidavit came from one of Singleton's former lawyers who withdrew from the case for health and other reasons. He averred that he observed these same conditions on three separate occasions, that the rubber tip of his cane slid due to the leaking grease and that he provided pictures of the area behind the back door to GFM and Burger King. Singleton's second lawyer (who withdrew from the case because of the possibility he might have to testify about his observation of the same conditions), Singleton and her husband all gave similar affidavits.

On summary judgment the evidence must be viewed most favorably toward the respondent and against the movant. Therefore, we agree that a jury issue existed as to whether the invisible, slick conditions of the area by the restaurant's back door caused by Burger King's violation of the policy against stacking garbage outside its doors constituted deliberate acts or omissions which warrant an infer-

ence of conscious indifference to consequences of which, by their own admission, they were aware. See *North v. Toco Hills*, 160 Ga. App. 116 (286 SE2d 346) (1981). Consequently, the trial court did not err in denying the motion for summary judgment.

2. In light of our holding in Division 1, we need not address appellants' second enumeration of error.

*Judgment affirmed. Birdsong, P. J., and Blackburn, J., concur.*

DECIDED FEBRUARY 20, 1995 —
RECONSIDERATION DENIED MARCH 28, 1995 — ■■■■■■■■
■■■■■■■■■■■■■■

*Mozley, Finlayson & Loggins, Sewell K. Loggins, Deborah A. Finnerty*, for appellants.
*Glenville Haldi*, for appellee.