## A04A0476. HOWARD v. THE GRAM CORPORATION.
### (602 SE2d 241)

RUFFIN, Presiding Judge.

Mary Howard fell in a radio station's lobby and fractured her hip. She sued The Gram Corporation ("Gram"), which owned the radio station, for damages. Gram moved for summary judgment, which the trial court granted. On appeal, Howard challenges this ruling. For reasons that follow, we affirm.

Summary judgment is only proper when there is no genuine issue of material fact and the movant is entitled to judgment as a

matter of law.[1] We review the evidence and record de novo, construing all reasonable conclusions and inferences in favor of the nonmovant.[2]

Viewed in this manner, the evidence showed that Howard's adult daughter, Marlana Howard, was being interviewed at a local radio station. Howard accompanied her daughter to the event. According to Marlana, her mother had no other business at the radio station. Before the interview, Howard and her daughter waited in the lobby. Howard saw a sign that read "Watch Your Step" in the front of the lounge and thought that the sign referred to the hallway to the studio. She did not believe that the sign had anything to do with the lounge area. As Marlana was being led back to the studio area for the interview, Howard decided to move to the other end of the lounge area to be near a radio that was on a desk. Howard did not notice that the lounge floor had a step down into the area near the desk. She fell, fracturing her hip and injuring her head, shoulder, and back.

Howard sued Gram, alleging negligence. Gram moved for summary judgment, arguing that Howard was only a licensee and as such only entitled to recover for wilful and wanton acts of Gram with regard to a static condition. The court agreed and, finding no evidence that Gram acted wilfully or wantonly, granted Gram summary judgment. We find no error.

Howard's status as either a licensee or an invitee determines the duty of care that Gram owed her.[3] An invitee is someone whom a landowner, by express or implied invitation, induces or leads to come upon his premises for any lawful purpose.[4] A licensee, on the other hand, is a person who is neither a customer, a servant, nor a trespasser, who does not stand in any contractual relation with the landowner, and who is permitted to go on the premises merely for her own interests, convenience, or gratification.[5] The generally "accepted test to determine whether one is an invitee or a licensee is whether the party coming onto the business premises had present business relations with the owner or occupier which would render [her] presence of mutual benefit to both, . . . or was for business with one other than the owner or occupier."[6]

Here, we see no benefit to the radio by virtue of Howard's visit. She was not required to drive her daughter to the interview, as the

---

[1] See OCGA § 9-11-56 (c); *Aldredge v. Symbas*, 248 Ga. App. 578, 579 (547 SE2d 295) (2001).

[2] See *Spear v. Calhoun*, 261 Ga. App. 835 (584 SE2d 71) (2003); *Matjoulis v. Integon Gen. Ins. Corp.*, 226 Ga. App. 459 (1) (486 SE2d 684) (1997).

[3] See *Moore-Sapp Investors v. Richards*, 240 Ga. App. 798, 799 (1) (a) (522 SE2d 739) (1999).

[4] See OCGA § 51-3-1.

[5] See OCGA § 51-3-2.

[6] *Moore-Sapp*, supra. See also *Restaura, Inc. v. Singleton*, 216 Ga. App. 887 (1) (456 SE2d 219) (1995).

record demonstrates unequivocally that Marlana drove herself and her mother to the station. And Marlana admitted on deposition that her mother went to the station "just to be with" her and that she had "no other business . . . at the radio station." Under these circumstances, Howard is properly considered a licensee.[7]

As a general rule, an owner or occupier of land is liable to a licensee injured by a condition on the property

> only if the owner (a) knows or has reason to know of the condition and should realize that it involves an unreasonable risk of harm to the licensee, and should expect the licensee will not discover or realize the danger; and (b) fails to exercise reasonable care to make the condition safe or to warn the licensee of the condition and risk involved.[8]

But "where the alleged negligence arises from a dangerous static condition on the premises, the duty remains not to injure the licensee wilfully or wantonly."[9] And "[i]t has long been the position of this court that the mere existence or maintenance of a difference in floor levels or of steps in a business building does not constitute negligence."[10] As it cannot be said that Gram wilfully or wantonly injured Howard by maintaining a floor that was not perfectly level, the trial court properly granted summary judgment in favor of Gram.[11]

The dissent, however, concludes that the trial court erred in granting summary judgment. In reaching this conclusion, the dissent advocates expanding the longstanding definition of licensee in the State of Georgia to accommodate the modern reality that friends and family often accompany invitees to places of business. Such expansion is unwarranted, and the dissent's reasoning is unpersuasive.

*Pye v. Reagin*,[12] the case cited by the dissent, does not dictate a different result. In that case, a plaintiff sued a doctor's office after she tripped and fell on a tree root between the parking lot and the building. The trial court granted summary judgment in favor of the defendant. Although this Court treated the plaintiff as an invitee, such treatment was not crucial to our analysis as we affirmed the trial court's ruling on the basis that the plaintiff had equal knowledge of

---

[7] See *Restaura*, supra at 887-888 (1); *Mut. Life Ins. Co. of New York v. Churchwell*, 221 Ga. App. 312, 314 (2) (471 SE2d 267) (1996); *Venable v. Langford*, 116 Ga. App. 257, 258-259 (2) (157 SE2d 34) (1967).

[8] *Hartley v. Macon Bacon Tune, Inc.*, 234 Ga. App. 815, 817 (507 SE2d 259) (1998).

[9] *Rice v. Elliott*, 256 Ga. App. 87 (567 SE2d 721) (2002).

[10] (Punctuation omitted.) *Wilson v. Duncan*, 211 Ga. App. 814 (440 SE2d 550) (1994).

[11] See *Rice*, supra.

[12] 262 Ga. App. 490 (586 SE2d 5) (2003).

the static defect.[13] In other words, that case did not expand an owner's liability based upon a broad reading of the term "invitee."

Moreover, the extra-jurisdictional cases cited by the dissent do not require a different result. In most of these cases, the injured party fell while in a retail establishment that was open to the public at large.[14] And where such retail establishment sells goods to all comers, any person entering the premises occupies the status of invitee.[15] Even if the injured party does not have a present intent to make a purchase upon entry, the existence of a possible economic exchange is of mutual benefit to both parties.[16] Similarly, mutual benefit may be found where a parent takes a child to school or where a friend or family member drives an elderly patient to the hospital.

In this case, however, there is no evidence that the radio station benefitted by Howard's decision to accompany her daughter to the interview. And, unlike retail establishments, it cannot reasonably be said that a radio station impliedly invites the public at large into its lobby. Under these circumstances, Howard falls squarely within the existing definition of licensee, and the trial court properly granted summary judgment in favor of Gram.

*Judgment affirmed. Smith, C. J., Andrews, P. J., Johnson, P. J., Blackburn, P. J., Eldridge, Ellington, Mikell and Adams, JJ., concur. Barnes, Miller and Phipps, JJ., dissent.*

MILLER, Judge, dissenting.

Since I believe that the majority has ignored several persuasive authorities from other states and binding Georgia precedent that mandates that the plaintiff here be treated as an invitee and not a mere licensee, I must respectfully dissent.

Viewed most favorably to Howard, the evidence reveals that Howard accompanied her adult daughter to a local radio station

---

[13] Id. at 491-492.

[14] See *Crane v. Smith,* 144 P2d 356 (Cal. 1943) (grocery store); *Farrier v. Levin,* 176 Cal. App. 2d 791 (1959) (liquor and delicatessen store); *Nave v. Hixenbaugh,* 304 P2d 482 (Kan. 1956) (gas station). In the fourth case cited by the majority, *Sisters of Charity of Cincinnati v. Duvelius,* 173 NE 737, 740 (Ohio 1930), the plaintiff, a nurse who fell in a hospital, clearly comes within the existing Georgia definition of an invitee.

[15] See OCGA § 51-3-1 ("Where an owner or occupier of land, by express or implied invitation, induces or leads others to come upon his premises for any lawful purpose, he is liable in damages to such persons for injuries caused by his failure to exercise ordinary care in keeping the premises and approaches safe."); *Hicks v. M. H. A., Inc.,* 107 Ga. App. 290, 292 (2) (b) (129 SE2d 817) (1963) (plaintiff was invitee because defendants had an interest in her "visit, for the success of their shopping center venture largely depend[ed] upon whether their tenants [did] a satisfactory volume of business"); Cf. *Burrow v. K-Mart Corp.,* 166 Ga. App. 284, 286 (1) (304 SE2d 460) (1983) (" ' "a corporation engaged in the retail mercantile business impliedly extends an invitation to the public to trade there" ' ").

[16] See, e.g., *Frankel v. Antman,* 157 Ga. App. 26, 27 (276 SE2d 87) (1981) (monetary consideration not essential to invitee relationship).

pursuant to an invitation to the daughter to be interviewed at the station in connection with the daughter's campaign for a city council position. The two women sat in the radio station's lounge for some time and spoke with a radio station employee. This lounge area was the area designated for radio station guests and was not part of the off-limit or interior part of the station. Howard pointed out to her daughter a "Watch Your Step" sign in the front of the lounge and told her that apparently something was wrong with the passageway back to the studio and to be careful. Howard was injured as she moved over an unseen step-down in the lounge floor near a desk.

The majority erroneously concludes that, under the above circumstances, Howard was a mere licensee and therefore could not hold Gram liable for her injuries absent evidence that Gram wilfully or wantonly injured her. However, a more careful analysis reveals that Howard was an invitee and that Gram therefore owed her a higher level of duty.

An invitee is someone whom a landowner (by express or implied invitation) induces or leads to come upon his premises for any lawful purpose. OCGA § 51-3-1. A licensee is a person who is neither a customer, a servant, nor a trespasser, who does not stand in any contractual relation with the landowner, and who is permitted (expressly or impliedly) to go on the premises merely for his own interests, convenience, or gratification. OCGA § 51-3-2 (a). Thus,

> [t]o determine whether a person is an invitee or a mere licensee, the nature of his relation or contact with the owner or occupier of the premises must be determined. The test is whether the injured person *at the time of the injury* had *present* business relations with the owner of the premises which would render his presence of mutual aid to both, or whether his presence on the premises was for his own convenience.

(Citations and punctuation omitted; emphasis in original.) *Restaura, Inc. v. Singleton,* 216 Ga. App. 887 (1) (456 SE2d 219) (1995).

Based on this standard, we have at times held that persons who are merely accompanying an invitee are on the premises for their own interests, convenience, or gratification and are therefore licensees. *Restaura,* supra, 216 Ga. App. at 887-888 (1); *Venable v. Langford,* 116 Ga. App. 257, 258-259 (2) (157 SE2d 34) (1967). Since the facts are undisputed that Howard had no present business relations with Gram but was simply accompanying her adult daughter to the scheduled interview, these cases would indicate that Howard was a licensee.

Nevertheless, a more recent case has held otherwise. Last year in *Pye v. Reagin,* 262 Ga. App. 490 (586 SE2d 5) (2003), we considered

the status of a woman accompanying her friend to the doctor's office. We held that the landowner owed to this woman the duties owed to an invitee, and we used this standard to determine the merits of the case. Id. at 491.

The conflict in this area of law gives us cause to consider the matter anew. In today's society, it has become expected and known that friends and family often accompany invitees to places of business. A parent will take his child to school; a friend will accompany an elderly patient to the doctor's office; a neighbor will go to the store to assist a neighbor in deciding what to buy or simply to provide companionship; a spouse will drive the other spouse to the hospital and stay there to provide moral support; a family member may accompany an invited guest to a radio station lounge area that is open to the public.

Landowners who invite persons to their premises are certainly aware of this common occurrence and in fact deem this in their best business interests since without such companions invitees might well not come as often to the premises and provide the benefits to the landowner. In other words, the presence of the companion encourages the invitee to accept the invitation to come to the premises, which benefits the landowner. Cf. *Etheridge Motors v. Haynie*, 103 Ga. App. 676, 680 (3) (120 SE2d 317) (1961) (one who accompanies invitee/friend to business to inspect repair work occupies position of invitee). Other jurisdictions have made similar analyses. See *Crane v. Smith*, 144 P2d 356, 361 (Cal. 1943); *Farrier v. Levin*, 176 Cal. App.2d 791, 796 (1959); *Nave v. Hixenbaugh*, 304 P2d 482, 488 (Kan. 1956); *Sisters of Charity of Cincinnati v. Duvelius*, 173 NE 737, 740 (Ohio 1930). Indeed, as an FCC-regulated entity that has a duty to serve the public good and has a lounge area that is open for public use, the radio station here should have been keenly aware of the circumstances that would give rise to Howard being placed in the position of an invitee when she accompanied her daughter to an interview that was requested by the station.

The majority's contention that our recent and binding authority of *Pye v. Reagin*, supra, does not dictate a necessary expansion of the invitee doctrine is unpersuasive. The fact that the injured party in *Pye* was a person who accompanied an invitee to a doctor's office, and was still treated as an invitee for purposes of the analysis in the opinion, is a central proposition for which that case stands. The plaintiff in *Pye* ultimately did not prevail on her claim, because, *as an invitee*, she was unable to show that the defendant had superior knowledge of the hazard that allegedly caused her injury. See *Pye*, supra, 262 Ga. App. at 491-492. The plaintiff's status as an invitee who accompanied a friend to a place of business in *Pye* spurred the

critical area of analysis in that case, which analysis now dictates the proper decision in the present case.

Thus, those who accompany invitees are themselves implicit invitees and should therefore be entitled to the same standard of care that a landowner owes invitees. Those cases holding otherwise should be overruled. See *Restaura*, supra, 216 Ga. App. at 887-888 (1); *Venable*, supra, 116 Ga. App. at 258-259 (2).

Since Howard was an invitee, Gram could be liable to her for injuries caused by Gram's failure to exercise ordinary care in keeping its premises and approaches safe. OCGA § 51-3-1. Failing to warn Howard of a hazard on the premises known to Gram could form the basis for finding a breach of Gram's duty to her. See *Berson v. American Golf Corp.*, 265 Ga. App. 772 (595 SE2d 622) (2004). Here the hazard on Gram's premises was a level change (a "step-down") in the floor of the lobby of the premises. The entire floor of the lobby, both the upper level and the lower level, was covered in the same solid-colored carpeting. No color change differentiated or emphasized the change in the floor level. Although there was a warning sign present ("Watch Your Step"), its placement did not clearly warn of the danger present in the lobby, as the sign was near the front and side of the lobby on the side where there was a hallway going back to the studio where it could allow a jury to decide that such sign warned visitors that the hazard lay in the hallway region as opposed to right in the middle of the lobby (the conclusion reached by Howard when she saw the sign). The two EMTs who came to Howard's aid did not see the step-down and both tripped over the level change. Indeed, two Gram employees who knew of the level change both, on occasion, had stumbled over the level change. Thus, as the evidence was anything but plain and palpable as to the landowner's negligence, summary judgment was inappropriate. See *Robinson v. Kroger Co.*, 268 Ga. 735, 748 (2) (b) (493 SE2d 403) (1997) (the negligence of the defendant is generally not susceptible of summary adjudication; "summary judgment is granted only when the evidence is plain, palpable, and undisputed").

I am authorized to state that Judge Barnes and Judge Phipps join in this dissent.

DECIDED JULY 13, 2004 — ▉▉▉▉▉▉▉

*Nicola M. Bajalia*, for appellant.
*Alexander & Vann, William C. Sanders*, for appellee.