A11A0336. SANDERSON FARMS, INC. v. ATKINS.

(713 SE2d 483)

ADAMS, Judge.

Jessie Atkins, a federal food inspector, sued Sanderson Farms, Inc. ("Sanderson") after he allegedly slipped and fell on a piece of viscera at Sanderson's chicken processing plant. Sanderson appeals the Superior Court of Colquitt County's denial of its motion for summary judgment. The trial court found that a genuine issue of material fact exists as to whether Sanderson had equal or superior knowledge of the allegedly hazardous condition of the floor, in light of Sanderson's employment of "floor people" charged with the responsibility of keeping the plant floors clean. We granted Sanderson's application for interlocutory appeal, but affirm.

Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. OCGA § 9-11-56 (c). We review a grant or denial of summary judgment de novo and construe the evidence in the light most favorable to the nonmovant. *Home Builders Assn. of Savannah v. Chatham County*, 276 Ga. 243, 245 (1) (577 SE2d 564) (2003).

So viewed, the record shows that Sanderson owns and operates a chicken processing plant in Moultrie. In addition to Sanderson employees, daily on-site, federal food inspectors are required to inspect each bird processed in the plant. See 21 USC § 451 et seq. Atkins began working for the United States Department of Agriculture ("USDA") as a poultry line inspector in 2001, working in several different poultry plants before he was transferred to Sanderson in 2005. His duties required him to stand on an elevated platform (a few steps up, perhaps three feet high) and inspect hanging chicken carcasses for signs of disease or pathogens as they moved through a motorized processing line. He worked in close proximity with other USDA and Sanderson employees at his workstation. In fact a Sanderson "trim person" worked next to each

inspector; that person responds to the inspector's instructions regarding suspect meat by either marking it, discarding it, condemning it, or taking it to a veterinarian or plant official for inspection. A big trough of water runs along the floor under the processing line, in which "the guts and water run down."

Between 2005 and 2007, Atkins worked the morning shift from 5:15 a.m. to 1:45 p.m. At around 9:00 a.m. on January 16, 2007, as he began to leave for a scheduled, ten-minute, inspector break, and after being replaced by another USDA inspector, Atkins allegedly slipped and fell down the metal stairs of his platform. Atkins testified that he slipped on a piece of chicken viscera that was on the platform itself, at the top of the steps. He saw the substance on his shoe after the fall. Atkins alleges that he has severe back pain as a result of the accident and may need surgery in the future.

There is no indication in the record that anyone saw the substance before the fall. Atkins admits that he does not know how long the substance was on the platform before he stepped on it and that he does not know if any Sanderson employees were aware that it was there.

On appeal, Sanderson contends that Atkins was a mere licensee and not an invitee, and that therefore the corresponding lower standard of care applies. An owner is liable to a licensee only for wilful or wanton injury, see OCGA § 51-3-2, for which there is admittedly no evidence here. Sanderson also contends that even under the invitee standard, it is not liable to Atkins based on the evidence in the record. We disagree with both points.

1. Sanderson argues that, as an inspector employed by the USDA, Atkins should be classified as a licensee. We disagree. In Georgia, a licensee "(1) Is neither a customer, a servant, nor a trespasser; (2) Does not stand in any contractual relation with the owner of the premises; and (3) Is permitted, expressly or impliedly, to go on the premises merely for his own interests, convenience, or gratification." OCGA § 51-3-2 (a). On the other hand, one is an invitee where "an owner or occupier of land, by express or implied invitation, induces or leads others to come upon his premises for any lawful purpose." OCGA § 51-3-1. "An invitation is inferred where there is a common interest or mutual advantage, while a license is inferred where the object is the mere pleasure or benefit of the person using it." *Ballenger Paving Co. v. Gaines*, 231 Ga. App. 565, 571 (499 SE2d 722) (1998). "The test is whether the injured person at the time of the injury had present business relations with the owner of the premises which would render his presence of mutual aid to both, or whether his presence on the premises was for his own convenience." Id.

Atkins was not present at Sanderson merely for his own pleasure

or convenience but rather pursuant to USDA responsibilities. The record establishes that Sanderson could not have legally conducted business without the presence of USDA inspectors, which indicates that Sanderson received an advantage from Atkins's presence on the property. It is easy to infer that Sanderson invited Atkins onto the premises in order to ensure compliance with federal regulations so that it could operate the plant. "An implied invitation is one which is held to be extended by reason of the owner doing something or permitting something to be done which fairly indicates to the person entering that his entry and use of the property is consistent with the intents and purposes of the owner." (Citation and punctuation omitted.) *Handiboe v. McCarthy*, 114 Ga. App. 541, 541 (1) (151 SE2d 905) (1966).

Sanderson cites two cases for the proposition that "government employees who are present on the property of another, under permission of law, are licensees rather than invitees": *Baxley v. Williams Constr. Co.*, 98 Ga. App. 662 (1) (106 SE2d 799) (1958) (fireman responding to a fire); *London Iron & Metal Co. v. Abney*, 245 Ga. 759 (267 SE2d 214) (1980) (police officer responding to a burglar alarm). But these cases involve injuries sustained by a firefighter and a police officer in the course of responding to emergencies not predictable by the premises owner. As the Court in *Baxley* explained,

> it is impossible to forecast the precise place where or time when the fireman's duties may call him, and to require an owner or occupier of premises to exercise at all times the high degree of care owed to an invitee in order to guard against so remote and unpredictable an injury would be an intolerable burden.

*Baxley*, 98 Ga. App. at 669. See also *London Iron*, 245 Ga. at 760 (same reasoning). Here, by contrast, Sanderson obviously prepared for USDA inspectors to be on the premises on a daily basis. Among other things, Sanderson provided platforms and break rooms for the USDA inspectors, as well as hired employees specifically to assist them.

Sanderson also relies on dicta in one case that states that there is "considerable doubt that [a federal poultry inspector] occupied the status of an invitee on appellee's business premises rather than that of a mere licensee." *Pierce v. Fieldale Corp.*, 194 Ga. App. 303, 304 (390 SE2d 298) (1990). In addition to the statement being dicta, the Court cited *London Iron*, the police officer case, which itself explains that permission to enter the premises will constitute an invitation if " 'circumstances . . . imply an assurance that the premises have been

prepared and made safe for the particular visit.' Prosser, Torts, § 60, p. 378 (4th Ed. 1971)." *London Iron*, 245 Ga. at 760 (1). See also Restatement (Second) of Torts, § 345, comment c (distinguishing those who enter the premises "for a purpose directly or indirectly connected with the business of the possessor," such as "a building, sanitary, or safety inspector" who generally are invitees, from firemen and policemen who "are likely to enter at unforeseeable times, upon unusual parts of the premises, and under circumstances of emergency").

In conclusion, we hold that Atkins was an invitee.

2. Applying the standard for invitees, summary judgment was properly denied because Sanderson failed to carry its burden on summary judgment to establish that it did not have constructive knowledge of the substance on the floor. An owner/occupier owes invitees "a duty of ordinary care to have the premises in a reasonably safe condition and not to expose the invitees to unreasonable risk or to lead them into a dangerous trap." (Citations omitted.) *Robinson v. Kroger Co.*, 268 Ga. 735, 740 (1) (493 SE2d 403) (1997); OCGA § 51-3-1. "This includes inspecting the premises to discover possible dangerous conditions of which the owner/occupier does not have actual knowledge, and taking reasonable precautions to protect invitees from dangers foreseeable from the arrangement or use of the premises." (Citations omitted.) Id. "Where reasonable minds can differ as to the conclusion to be reached with regard to questions of whether an owner/occupier breached the duty of care to invitees and whether an invitee exercised reasonable care for personal safety, summary adjudication is not appropriate." (Citation omitted.) Id.

Because Atkins does not allege that Sanderson had actual knowledge of the substance, we consider constructive knowledge, which can be shown in two ways: (1) "by showing that an employee of the defendant was present in the immediate area and could easily have seen the substance and removed it"; or (2) "by showing that the substance was on the floor for such a time that it would have been discovered and removed had the proprietor exercised reasonable care in inspecting the premises." (Citation omitted.) *Roberson v. Winn-Dixie Atlanta*, 247 Ga. App. 825, 826 (544 SE2d 494) (2001).

Here, Atkins does not argue the first prong. Moreover, there is no evidence that anyone was in the immediate area at the time of the accident who could have easily seen the substance. Although a Sanderson trim person was working next to Atkins, she used separate steps on the platform, and there is no evidence that she was in a position to easily see a substance on Atkins's platform. "[S]howing that an employee was merely working in the immediate area of a foreign substance is not enough; the employee must have been in a position to have easily seen the substance and removed it." (Citation

and punctuation omitted.) *Brown v. Host/Taco Joint Venture*, 305 Ga. App. 248, 250 (699 SE2d 439) (2010). There is also no evidence that the substance was "of a size or nature that would have made it easily visible." Id.

With regard to inspections, "[i]n order to prevail at summary judgment based on lack of constructive knowledge, the owner must demonstrate not only that it had a reasonable inspection program in place, but that such program was actually carried out at the time of the incident." (Citation omitted.) *Brown*, 305 Ga. App. at 251. Sanderson established that it has a customary inspection and cleaning procedure. The evidence shows that overnight and three times a shift, during company breaks when the chickens are not circulating, Sanderson "floor people" clean all the floors and platforms with high pressure hoses. At all other times, the floor people constantly circulate, picking up chicken parts that have fallen on the floor and platforms and using their hoses to clean up as often as needed; keeping the place clean is their sole responsibility.

Sanderson has failed, however, to introduce any evidence to show adherence to this inspection and cleaning procedure on the day of Atkins's fall. The first company break was scheduled for 7:30 a.m. Atkins fell at about 9:00 a.m., at the beginning of an inspector break, which comes in between company breaks. But there is simply no evidence in the record that the cleaning scheduled prior to Atkins's fall was in fact performed that day. Nor is there any evidence establishing that the floor people were attending to their constant cleaning duties in Atkins's area on the morning he fell. The only evidence is that on that day, three floor people were scheduled to be on duty. The Sanderson processing manager could not name all the people working that day or testify if anyone was absent. He indicated that he could tell if he checked his records or the computer system, but no information of that sort was introduced into evidence. Nor is there any evidence as to what any of these employees were doing on the morning of the fall.

"Evidence establishing an adherence to customary inspection and cleaning procedures on the specific day in question is required, while proof of the mere existence of such customary procedures is insufficient. [Cit.]" *Mallory v. Piggly Wiggly Southern*, 200 Ga. App. 428, 430 (1) (408 SE2d 443) (1991). In *Ingles Markets v. Martin*, 236 Ga. App. 810 (513 SE2d 536) (1999), this Court affirmed the denial of summary judgment where there was testimony that the store's floor was usually swept every hour but no evidence that the sweeping was performed on the day of the fall. Id. at 812. And although Atkins does not know how long the viscera was on the platform before he fell, "a plaintiff need not show how long a substance has been on the floor unless the defendant has established that reasonable inspection

procedures were in place and followed at the time of the incident. [Cits.]" *Straughter v. J. H. Harvey Co.*, 232 Ga. App. 29, 30 (1) (500 SE2d 353) (1998) ("no admissible evidence in the record that defendant followed a reasonable inspection and sweeping policy on the date in question").

Finally, it is true that "a 'proprietor may be liable only if he had superior knowledge of a condition that exposed an invitee to an unreasonable risk of harm.' [Cit.]" *Dickerson v. Guest Services Co. of Virginia*, 282 Ga. 771, 772 (653 SE2d 699) (2007); *Robinson*, 268 Ga. at 736. And both Sanderson and Atkins knew the risk of chicken viscera on the platform. But "it is the plaintiff's knowledge of the specific hazard precipitating a slip and fall which is determinative, not merely his knowledge of the generally prevailing hazardous conditions or of hazardous conditions which plaintiff observes and avoids." (Punctuation and footnote omitted.) *Barton v. City of Rome*, 271 Ga. App. 858, 861 (610 SE2d 566) (2005). See, e.g., *Nosiri v. Helm*, 301 Ga. App. 380, 381 (687 SE2d 635) (2009) (no evidence that plaintiff was aware of exact position of cord on the day she fell even though she knew it had been there the day before her fall and other days). Compare *Pierce*, 194 Ga. App. at 304-305 (plaintiff had equal knowledge of slippery floor; not a foreign substance case). There is no evidence here that Atkins had specific knowledge of the substance on which he fell.

*Judgment affirmed. Barnes, P. J., and Blackwell, J., concur.*

DECIDED JULY 1, 2011 — ▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮

*Coleman Talley, George T. Talley, Eric A. Collins*, for appellant. *Goldberg & Dohan, Nathan W. Kotas*, for appellee.