**FIRST DIVISION**
**BARNES, P. J.,**
**MARKLE and HODGES, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules

March 26, 2026

# In the Court of Appeals of Georgia

A26A0113. LOVELESS v. GSH INVESTMENTS, LLC.

BARNES, Presiding Judge.

After she was injured when an exterior staircase collapsed at an apartment complex, Monnie Loveless brought this premises liability action against the owner of the complex, GSH Investments, LLC ("GSH"). The trial court denied two of Loveless' motions to compel additional discovery and granted GSH's motion for summary judgment. On appeal, Loveless contends that genuine issues of material fact precluded the grant of summary judgment in favor of GSH. She also challenges the trial court's denial of her motions to compel. For the reasons discussed below, we reverse the trial court's grant of summary judgment to GSH and affirm the court's denial of the motions to compel.

Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. A de novo standard of review applies to an appeal from a grant of summary judgment, and we view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant.

*Pollard v. Deloach*, 372 Ga. App. 303, 304(1) (903 SE2d 329) (2024). See OCGA § 9-11-56(c).

So viewed, the evidence shows that in July 2020, GSH purchased the Drew Lane Apartments located in Walker County, Georgia. The complex included apartment buildings and duplexes. Several duplexes were designed with a set of wooden stairs that ascended from the ground to a covered landing where the entrances to two rental units were located.

While GSH was in the process of securing financing for the purchase of the apartment complex, the bank underwriting the loan obtained an appraisal report for the complex that was shared with GSH. At the time of the appraisal, approximately 50 percent of the rental units were occupied. The appraisal report described the condition of the buildings as "below average" in light of "deferred maintenance" and noted that the units needed "remodeling/updating." The report further specified that

GSH "plan[ned] to update units and correct deferred maintenance prior to re-leasing units."

GSH was also provided with a survey report prepared for its insurer. The survey report included an evaluation of one of the duplexes and noted "maintenance concerns" with the "[e]xterior [f]acade," the gutters and downspouts, and the roof. The report also indicated that the "[r]oof has algae streaking, lifting shingles, and granular loss on all slopes," and that there was "[d]ebris in the gutters on the rear."

After receiving the appraisal and survey reports, GSH did not perform an inspection of the exteriors of the buildings or of the stairways to the duplexes as part of its renovations to the rental units. GSH did not establish a formal inspection process for the premises and instead relied on tenants and prospective tenants to identify and report any problems that needed correction.

After purchasing the apartment complex, GSH began renovating the rental units so that they could be leased to new tenants and began advertising units for lease. Because of the ongoing renovation work, GSH required prospective tenants to get approval before viewing any of the rental units. However, the leasing office was located approximately 30 minutes away from the apartment complex, and GSH

sometimes allowed prospective tenants to view unlocked rental units unaccompanied by and without the supervision of any employees.

In early August 2020, Loveless' adult daughter, Amanda Loveless,[1] saw an online advertisement for the apartment complex and submitted a rental application. After Amanda was approved to rent an apartment, she visited the apartment complex four times. GSH allowed Amanda to visit the rental units as they were being renovated so that she could choose which unit she wanted to rent, left the units unlocked, did not require her to schedule a particular time for a visit, and did not supervise or meet with her at the complex when she visited. GSH representatives never restricted Amanda from bringing friends or family with her during the visits. During her second and third visits to the apartment complex, Amanda brought a friend, and on her fourth visit she brought Loveless, her children, and her niece.

Before her first and second visits, Amanda spoke with a GSH representative and was given permission to go to the apartment complex and look at the different units that were in the process of being renovated. Before her third visit, Amanda learned that unit 11, one of the duplex units, would be the first to have its renovations

---

[1] We will refer to Amanda Loveless by her first name for clarity.

completed and was available to rent, and she spoke with a GSH representative about visiting it. The representative gave her permission to visit the unit.

Unit 11 had several wooden stairs that led up to a landing that it shared with another unit, and Amanda did not notice any problems with the staircase when she traversed it during her third visit. After visiting unit 11, Amanda texted with a GSH representative about additional renovations to the interior of the unit. On September 1, 2020, Amanda paid a rental deposit for unit 11, and the parties scheduled September 11 as the date for her to sign the lease and move in.

On September 4, 2020, Amanda visited the apartment complex for a fourth time. Amanda took Loveless with her to unit 11 so that Loveless could "check out" the unit as "security" before Amanda moved into the unit. Amanda did not speak again with a GSH representative before the fourth visit, believing that she had permission to revisit unit 11 in light of their prior conversations.

After Amanda and Loveless arrived at unit 11, Amanda successfully walked up the staircase to the landing in front of the unlocked unit door. However, as Loveless ascended the staircase, it collapsed suddenly and without warning, and she fell backwards, suffering a severe laceration to her right leg.

5

A licensed professional engineer retained by Loveless evaluated the exterior of the duplex and photographs of the collapsed staircase to unit 11, and she concluded that the collapse of the stairs was caused by wood rot, that the wood rot was caused by water damage, and that the water damage was caused by improper gutter maintenance. The engineer further noted that photographs of the collapsed staircase showed that the stairs had visible dark discoloration, which, she opined, was a "sign that there [was] something wrong" and was indicative of concentrated roof runoff and potential wood rot.

Loveless commenced this premise liability suit against GSH,[2] asserting that she was an invitee of GSH at the time of the staircase collapse, that GSH had actual and/or constructive knowledge of the hazard posed by the stairs, and that GSH was liable for failing to exercise ordinary care to keep the premises safe as required by OCGA § 51-3-1. GSH answered, denying liability. As the litigation progressed, several discovery disputes arose between the parties, and while the trial court partially granted Loveless' first motion to compel, the court denied her second and third motions.

---

[2] Loveless also initially sued GSH Properties Corporation and several John Doe defendants, but the trial court later entered a consent order dismissing those parties from the case without prejudice.

GSH moved for summary judgment, and the trial court granted the motion. The trial court concluded that the uncontroverted evidence showed that GSH did not grant Amanda or Loveless permission to visit unit 11 on September 4 and, as a result, Loveless was a trespasser rather than an invitee or licensee as a matter of law. The court further concluded that GSH owed no duty of care to Loveless as a trespasser because the evidence showed that it did not know of her presence on the premises, and that even if Loveless was an invitee, there was no evidence that GSH had actual or constructive knowledge of the hazard posed by the staircase. Loveless now appeals from the trial court's summary judgment order.[3]

1. Loveless contends that the trial court erred in concluding as a matter of law that she was a trespasser. According to Loveless, there was evidence from which a jury could find that she occupied the status of an invitee when she accompanied Amanda

---

[3] The trial court vacated its original summary judgment order and re-entered it because the parties were not given proper notice of the original order. Loveless then filed a timely notice of appeal from the re-entered order, as allowed by *Cambron v. Canal Ins. Co.*, 246 Ga. 147, 148–49(1) (269 SE2d 426) (1980) (disapproved in part on other grounds by *Wright v. Young*, 297 Ga. 683, 684 n.3 (777 SE2d 475) (2015)). See *JPMorgan Chase Bank, N. A. v. Whitaker*, 376 Ga. App. 254, 262(2) (918 SE2d 425) (2025).

to unit 11 and was injured on the staircase. We conclude that a genuine issue of material fact exists as to Loveless' status on the premises at the time of her injury.

The duty owed by a landowner to keep its premises safe for visitors varies to a certain degree depending on whether the person entering the premises is a trespasser, invitee, or licensee. See OCGA §§ 51-3-1, 51-3-2, 51-3-3; *Cham v. ECI Mgmt. Corp.*, 311 Ga. 170, 173(2)(a) (856 SE2d 267) (2021).[4] If the person is an invitee, the landowner owes her a duty "to exercise ordinary care in keeping the premises and approaches safe." OCGA § 51-3-1. See *Cham*, 311 Ga. at 173(2)(a). A landowner generally owes a lesser duty to refrain from wilfully or wantonly injuring a licensee or trespasser. See OCGA §§51-3-2(b), 51-3-3(b); *Brazier v. Phoenix Grp. Mgmt.*, 280 Ga. App. 67, 73(2) (633 SE2d 354) (2006).

---

[4] "The statutory source of a landlord's liability rests on the location of the alleged cause of the plaintiff's injury. If the alleged cause of the injury is in an area possessed by a tenant, then OCGA § 44-7-14 governs. If it is in an area possessed by the landlord, then OCGA § 51-3-1 et seq. governs." *Pollard*, 372 Ga. App. at 305(2) (citation modified). See *Cham*, 311 Ga. at 177–80(2)(b). Loveless was injured on an exterior staircase that led to a landing shared by unit 11 and another unit, and there is no evidence that GSH as the landlord "had fully parted with [its] possession and the right of possession of that staircase and landing." *Pollard*, 372 Ga. App. at 305(2) (citation modified). The principles of premises liability set out in OCGA § 51-3-1 et seq. therefore govern GSH's liability. Id.

"A trespasser is one who, though peacefully or by mistake, wrongfully enters upon property owned or occupied by another." *Jones v. Barrow*, 304 Ga. App. 337, 338(1) (696 SE2d 363) (2010) (citation modified). "An invitee is someone whom a landowner, by express or implied invitation, induces or leads to come upon his premises for any lawful purpose," while a licensee "is a person who is neither a customer, a servant, nor a trespasser, who does not stand in any contractual relation with the landowner, and who is permitted to go on the premises merely for her own interests, convenience, or gratification." *Howard v. Gram Corp.*, 268 Ga. App. 466, 467 (602 SE2d 241) (2004). See OCGA §§ 51-3-1, 51-3-2(a). "When there is conflicting evidence as to the legal status of the injured party, the question is rightfully left to the jury." *Ga. Dept. of Corr. v. Couch*, 312 Ga. App. 544, 546(1)(a) (718 SE2d 875) (2011). Mindful of these principles, we turn to the trial court's summary judgment ruling.

In concluding that Loveless was a trespasser, the trial court found that the uncontroverted evidence showed that GSH did not invite or grant permission to Amanda, or by extension Loveless, to visit unit 11 on September 4. The trial court relied on the undisputed fact that a GSH representative never gave Amanda and

9

Loveless express permission to enter the premises on that specific date and on the affidavit of a GSH representative averring that GSH had a policy of requiring visitors to get authorization before any visit to the apartment complex in light of the ongoing renovations. The trial court also found that there was no evidence that "GSH took any action to induce or lead [Loveless] to come to the premises." In reaching these conclusions, however, the trial court did not take into account evidence from which a jury could find that Amanda had an implied invitation from GSH to revisit unit 11 before signing her lease agreement and to bring a friend or family member with her.

"An implied invitation is one which is held to be extended by reason of the owner doing something or permitting something to be done which fairly indicates to the person entering that his entry and use of the property is consistent with the intents and purposes of the owner." *Sanderson Farms v. Atkins*, 310 Ga. App. 423, 425(1) (713 SE2d 483) (2011) (quotation marks omitted). "An invitation may arise from known customary use, and it may be inferred from conduct or from any state of facts upon which it naturally and necessarily arises." *Frazier v. Godley Park Homeowners Ass'n*, 342 Ga. App. 608, 609 (804 SE2d 176) (2017) (quotation marks omitted).

Amanda and Loveless' deposition testimony reflect that while Amanda admittedly did not speak again with the GSH representative before her return visit to unit 11 on September 4, she had previously been granted permission from the representative to view unit 11; she was engaged in discussions with the representative about the status of the renovations to unit 11; she had paid a deposit on the unit and had a date scheduled for signing her lease and moving in; and the representative had never expressed any restrictions on how many times she could visit. Amanda further testified that unit 11 had been left unlocked, that GSH representatives did not require her to schedule a particular time for visits, and the GSH representatives did not supervise or meet with her at the premises whenever she visited. Additionally, Amanda testified that GSH had never expressed any restrictions on her bringing someone else with her to the premises, and she had brought a friend with her for two prior visits without incident. Construed in the light most favorable to Loveless as the non-movant on summary judgment, Amanda and Loveless' deposition testimony would support a finding that Amanda had an implied invitation from GSH to revisit unit 11 on September 4 and to bring a family member such as Loveless with her. See

11

*Frazier*, 342 Ga. App. at 609; *Sanderson Farms*, 310 Ga. App. at 425(1). The trial court therefore erred in finding that Loveless was a trespasser as a matter of law.

A genuine issue of material fact also exists as to whether Loveless was an invitee or a licensee. As our Supreme Court has explained, "the determining question as to whether a visitor is an invitee by implication or a licensee is whether or not the owner or occupant of the premises will receive some benefit, real or supposed, or has some interest in the purpose of the visit." *Cham*, 311 Ga. at 174(2)(a) (quotation marks omitted). Put another way, "a person may be deemed an invitee if his presence on the property is of mutual benefit to both him and the landowner"; in contrast, "a licensee falls between an invitee and a trespasser and is one who is permitted, either expressly or impliedly, to go on the premises of another, but merely for his own interest, convenience, or gratification." Id. (citation modified).

At her deposition, Amanda testified that she took Loveless with her to view unit 11 on September 4 so that Loveless could "check out" the renovated unit as "security" before Amanda moved into the unit. Amanda's testimony, construed in the light most favorable to Loveless as the non-moving party, reflects that Loveless accompanied Amanda to the premises to look over unit 11 and confirm whether

Amanda should go through with signing the lease. A commercial landlord clearly has an interest in the purpose of a visit when a potential tenant brings a guest to help them check out or inspect the premises before closing on a lease, and the landlord directly benefits from the visit if it helps induce completion of the lease transaction. Accordingly, there is evidence from which a jury could find that Loveless was an invitee when she visited unit 11 and was injured on the staircase. See *Cham*, 311 Ga. at 183(3) (jury could conclude that individual was an invitee, where his presence on the premises benefitted the landlord by inducing someone else to lease an apartment there); *Etheridge Motors v. Haynie*, 103 Ga. App. 676, 680(3) (120 SE2d 317) (1961) (friend who accompanied an invitee to a business to inspect repair work done there also was an invitee). Alternatively, however, a jury could find from the evidence that Loveless was on the premises simply to accompany Amanda there and to view the rental unit for her own gratification and thus was more properly considered a licensee. See *Howard v. Gram Corp.*, 268 Ga. App. 466, 468 (602 SE2d 241) (2004) (holding that a plaintiff who was on the premises "just to be with her" daughter was a licensee). Given the record in this case, a jury must resolve Loveless' status on the premises when she sustained her injury. See *Couch*, 312 Ga. App. at 546(1)(a).

13

For the foregoing reasons, the trial court erred in determining as a matter of law that Loveless occupied the status of a trespasser. Rather, there is a genuine issue of material fact as to whether Loveless was a trespasser, licensee, or invitee.

2. GSH urges us to affirm the trial court's order as right for any reason on the ground that it did not breach any duty owed to Loveless. In granting summary judgment to GSH, the trial court found that even if Loveless was an invitee to whom GSH owed a higher duty, GSH did not breach its duty to her because there was no evidence that it had actual or constructive knowledge of the hazard posed by the staircase. As discussed in Division 1, there remain factual questions about Loveless' status on the property, making it premature to resolve what specific duty was owed to her. But even if we assume that Loveless was an invitee to whom GSH owed a higher duty, we cannot affirm the trial court's order on the alternative ground because there are factual questions regarding GSH's knowledge of the hazard.

If Loveless was an invitee, GSH owed her a duty to exercise ordinary care in keeping unit 11 and its approaches safe pursuant to OCGA § 51-3-1. See *Cham*, 311 Ga. at 173(2)(a). To recover on her claim under OCGA § 51-3-1, Loveless must establish, among other things, that GSH "had actual or constructive knowledge of the hazard."

14

*Pollard*, 372 Ga. App. at 306 (3) (quotation marks omitted). Issues regarding knowledge "are generally not susceptible of summary adjudication, and summary judgment is granted in a premises liability case only when the evidence is plain, palpable, and undisputed." Id. (citation modified).

Loveless presented evidence, through the licensed professional engineer, that the staircase collapsed as the result of wood rot, which in turn was caused by water damage resulting from improper gutter maintenance. Because there is no evidence that GSH had actual knowledge of the wood rot and water damage to the stairs, the determinative question is whether there is evidence of GSH's constructive knowledge.

> The duty of an owner or occupier of property to exercise ordinary care in keeping the premises safe includes inspecting the premises to discover possible dangerous conditions of which the owner/occupier does not have actual knowledge. So an owner/occupier is generally on constructive notice of what a reasonable inspection in the exercise of ordinary care would reveal. A property owner's constructive knowledge of a hazard may be inferred when there is evidence that the owner lacked a reasonable inspection procedure.

*Pollard*, 372 Ga. App. at 306(3) (citation modified). Furthermore, the burden does not shift to Loveless to show that a reasonable inspection would have revealed the defect that caused the staircase to collapse "unless [GSH] first demonstrates that there is an absence of evidence to support the claim that a reasonable inspection would have discovered this defect." Id. at 307(3) (citation modified).

GSH has not met that burden. The evidence, construed in favor of Loveless, showed that the stairs to unit 11 had visible dark discoloration indicative of water damage and wood rot, and that GSH had received appraisal and survey reports indicating that there were roof, gutter, and other deferred maintenance issues at the apartment complex that needed to be addressed before re-leasing units. "[T]he appearance or character of the premises may impose on the owner a duty to inspect for defects." *Pollard*, 372 Ga. App. at 307(3) (quotation marks omitted). Moreover, it is undisputed that GSH did not have an inspection procedure in place for the apartment complex and never inspected the staircase before its collapse, relying instead on tenants and prospective tenants to inform it of any hazards. Under these circumstances, a genuine issue of material fact exists as to whether GSH had constructive knowledge of the hazard posed by the staircase, and the trial court erred

16

in concluding otherwise. See id. (factual issues existed that precluded summary judgment on issue of property owner's constructive knowledge of defect in exterior stair that broke, where "there were indications that the staircase's fasteners were failing," and the property owner and manager did not "engage in any sort of regular or systematic inspection of the staircase"); *Gaskin v. Berry's Boat Dock*, 334 Ga. App. 642, 645 (780 SE2d 83) (2015) (genuine issue of material fact existed as to whether property owners had constructive knowledge that collapsed pipe posts had been attached to rotten wood, where the owners "did not establish as a matter of undisputed fact that they had a reasonable inspection procedure or that the procedure was carried out at the time of the accident").

For all of the aforementioned reasons, we reverse the trial court's grant of summary judgment to GSH.

3. Loveless contends that the trial court erred in denying her second motion to compel in which she sought additional deposition testimony from GSH's OCGA § 9-11-30(b)(6) representative. In support of her contention that she was "entitled to depose a competent witness," Loveless cites to OCGA § 9-11-30(b)(6) and then seeks

to incorporate into her appellate brief five pages of legal argument set out in her motion to compel filed in the trial court.

> Incorporating by reference arguments made in the court below
>
> is not approved by this Court and we decline to look in the record for matters which should have been set forth in the brief. Moreover, if we were to permit this practice a party could evade entirely the page limitations on briefs established in our Rules. See Court of Appeals Rule 24(f). Accordingly, we have limited our review of [Loveless'] arguments to those actually made in her appellate brief.

*Ellison v. Burger King Corp.*, 294 Ga. App. 814, 815(1) (670 SE2d 469) (2008). We therefore are left with Loveless' single citation to OCGA § 9-11-30(b)(6) as support for her contentions. "But an assertion of error followed by a legal citation is not legal argument, which requires, at a minimum, a discussion of the appropriate law as applied to the relevant facts." *Vick v. State*, 376 Ga. App. 716, 722(2) n.5 (920 SE2d 733) (2025) (citation modified). Loveless' argument therefore is deemed abandoned. See Court of Appeals Rule 25(d)(1) ("Any enumeration of error that is not supported in the brief by citation of authority or argument may be deemed abandoned."); *Arnold v. Fairway Mgmt.*, 376 Ga. App. 34, 44-45(2)(b)(iii) (918 SE2d 56) (2025).

4. Loveless also argues that the trial court erred in denying her third motion to compel in which she sought to have GSH produce additional tenant information. The only record citation included in connection with her argument is a citation to one page of her motion to compel filed in the trial court. However, assertions made in motions are not evidence. *Tahamtan v. Sawnee Elec. Membership Corp.*, 228 Ga. App. 485, 486 (491 SE2d 918) (1997).

> It is axiomatic that the burden is on the appellant to establish error from the record and this burden is not satisfied by mere assertions in [a] . . . brief. Given the appellant's burden of proving error by the appellate record, where, as here, insufficient information was cited in the record for appellate review, the trial court ruling must be upheld. [Loveless] has failed to meet [her] burden to demonstrate error by the record.

*Benchmark Rehab. Partners v. SDJ Logistics*, 367 Ga. App. 203, 205(4) (885 SE2d 224) (2023) (citation modified).

*Judgment affirmed in part and reversed in part. Markle and Hodges, JJ., concur.*

19